**Leroy R. SESSOMS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19241.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 13, 1965.

Decided March 31, 1966.

Mr. E. Grey Lewis, Washington, D. C., (appointed by this court), for appellant.

Mr. David W. Miller, Asst. U. S. Atty., at the time of argument, with whom Mr. David C. Acheson, U. S. Atty., at the time the brief was filed, Messrs. Frank Q. Nebeker and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee. Mr. John C. Conliff, Jr., U. S. Atty., at the time of argument, also entered an appearance for appellee.

Before PRETTYMAN, Senior Circuit Judge, and DANAHER and LEVENTHAL, Circuit Judges.

PER CURIAM:

This appeal is from a judgment sentencing appellant to imprisonment for one to three years concurrently upon his conviction of four counts of mail theft. It

---

involves a "very close case of mental defect" as the trial judge pointed out at bench conference following the jury's request for a supplementary instruction on insanity.[1]

At arraignment on August 28, 1964, the presiding judge stated that he understood that appellant was undergoing treatment or examination at St. Elizabeths Hospital and ordered commitment there for mental examination. In October the Superintendent of St. Elizabeths Hospital certified that appellant was competent to stand trial and was not then or on the date of the alleged offenses, July 17, 1964, suffering from a mental disease or defect.

On December 3, appellant's court-appointed attorney applied orally for an independent psychiatric examination, pointing out that St. Elizabeths diagnosed appellant as a "borderline defect" and that appellant had been discharged from the Navy as a moron with an IQ of 61. The motion was denied without prejudice, the District Court directing the prosecution to investigate the possibility of proceeding by civil commitment. On December 9, the prosecution advised the court that Dr. Platkin of St. Elizabeths reported that appellant's IQ was low, but "not low enough to consider him a mental deficient."[2] Defense counsel requested that defendant be seen by the Bureau of Mental Retardation, which he identified as a department at the D. C. General Hospital specializing in taking care of and judging mentally retarded individuals. He advised that a representative of that Bureau would come to see appellant in jail, without fee, "and all that would be required would be a Court Order." The court said: "The report from the hospital says that this defendant is mentally competent to stand trial. That is enough. He will go to trial."

The question of determination of mental competency was put over until December 11. No evidentiary hearing was held. Defense counsel referred to his requests for an independent examination. The court replied: "I won't do that. Why should I? He has been sent to the proper establishment, St. Elizabeths Hospital, and they have made a finding of competency. If we are going to start this business, we will never finish with it." The court held appellant competent to stand trial.

There can be little doubt that the presentation of the motion and ruling thereon would have been different if the court and counsel had been apprised of our subsequent *en banc* opinion in Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812, cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965). And compare Pate v. Robinson, 86 S.Ct. 836 (March 7, 1966).

There can also be little doubt that if the assignment judge had been made aware, even reasonably well aware, of the nature of the evidence as developed at trial and available before trial, an expert would have been appointed to assist the parties and the court. Such information would doubtless have developed at the kind of evidentiary hearing on competency contemplated by *Whalem* in case of challenge of St. Elizabeths findings.

The jury interrupted its deliberations to seek additional instructions on "mental defect" and, if found to exist, its possible sufficiency to justify a verdict of not guilty by reason of insanity. In addition to the mother's testimony as to the appellant's life-long inadequacy, the jurors knew the appellant had been discharged by the Navy on June 3, 1942, within three months after enlistment, and was then rated "as mentally defective at the moron level," with an IQ of 61, and only

---

1. The court recommended commitment to the Federal Reformatory at Petersburg, Virginia. On oral argument we were advised that the Attorney General had ordered commitment in the Atlanta, Georgia penitentiary.

2. At the trial Dr. Platkin, the Government's key witness on the insanity defense, testified that the IQ test administered by the St. Elizabeths psychologist, which he did not supervise, showed an IQ of 75, which was borderline in terms of mental defect.

third-grade reading ability. He had six years later been rejected as an enlistee in the Army, the report of which episode showed a history of long-standing neurotic disturbance, according to Dr. Platkin. The jurors in particular asked that they be supplied with a 1962 report of an examination of the appellant by Dr. Broucek, the Chief of Psychiatry at Atlanta Penitentiary.[3]

We think that in the circumstances at bar it is in the interest of justice to reverse and remand for appropriate further action.[4] This would embrace renewal, with the evidence indicated, of the motion for an order for a court-appointed expert pursuant to Rule 28. The report of such an expert, at least in supplementation of all other evidence mentioned, might have resulted in an evidentiary hearing pursuant to D.C. Code § 24–301 (1961), and in any event he would have been available as a witness at the trial.

The injustice with which we are concerned was not obviated at the trial by permitting defense counsel to read aloud to the jury pertinent excerpts from the St. Elizabeths record containing the information related above. Thus we note that the trial judge pointed out to the jury that there was no testimony as to the meaning of Dr. Broucek's diagnosis, as to whether it amounts to a mental disease or defect or not.

In view of our order we find it unnecessary to consider whether the trial court committed reversible error in limiting cross-examination of Dr. Platkin, or in his rulings and actions relating to the handling of the St. Elizabeths file.

For the reasons indicated, the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

---

**3.** Defense counsel had read to the jury the following excerpt from Dr. Broucek's report:

Section 3—Psychological Functioning:
Language skills were poorly developed and the subject showed extreme concretism in handling analogies and proverbs. His general fund of information was extremely meager. His memory for past events, dates and places is vague and generally poor, which is not surprising in view of his nomadism, alcoholism and generally disorganized life style. His immediate retention and recall were extremely poor. This subject's intellectual and emotional development appears to have been arrested at a very early level. He is a narcistic, schizoid individual with borderline intelligence who has little or no apparent impulse control, and no internalized system of values to aid him in evaluating his own behavior. The diagnosis: a sociopathic personality of severe type.

**4.** See Perry v. United States, 90 U.S.App. D.C. 186, 195 F.2d 37 (1952); cf. Watson v. Cameron, 114 U.S.App.D.C. 151, 312 F.2d 878 (1962).