William Prell **BRIZENDINE**, Petitioner,

v.

Harold R. **SWENSON**, Warden,
Respondent.

No. 1394.

United States District Court
W. D. Missouri, C. D.

Aug. 11, 1969.

**1012**

J. Arnot Hill, Kansas City, Mo., for plaintiff.

Gene E. Voigts, Asst. Atty. Gen., Jefferson City, Mo., for defendant.

JOHN W. OLIVER, District Judge.

### MEMORANDUM AND ORDER

#### I.

The state prisoner involved in this case invokes the habeas corpus jurisdiction of this Court for a second time. In Brizendine v. Swenson (W.D.Mo.1966), 261 F.Supp. 68, we dismissed petitioner's first application for federal habeas corpus because petitioner had not then exhausted his available state court postconviction remedies. Following that decision petitioner filed a *pro se* Missouri Rule 27.26, V.A.M.R. motion in the state trial court. The Supreme Court of Missouri affirmed the denial of that motion in State v. Brizendine (Mo.Sup.Ct. en banc 1968), 433 S.W.2d 321, with one judge dissenting.

We find and conclude that petitioner is now entitled to appropriate federal habeas corpus relief on two separate and independent grounds: (1) the federal standards enunciated in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966), although recognized by the Supreme Court of Missouri, were not properly applied to the undisputed factual situation presented; and (2) petitioner was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States.

#### II.

When this case was first here we noted that the Supreme Court of Missouri had stated in State v. Brizendine, (Mo.Sup. Ct.Div. 2, 1965) 391 S.W.2d 898, 901, (which affirmed petitioner's conviction on direct appeal) that "It is apparent from the transcript that neither appellant, the State, nor the Court, was aware of, or at least proceeded under Chapter 552 [a chapter of the Missouri statutes enacted in 1963 entitled Mentally Ill Persons in Criminal Cases in effect at the time of defendant's 1964 arraignment and trial]."

We stated in regard to the federal question of defendant's competency to stand trial that:

> The facts apparent from the transcript, assuming for the moment that the transcript is accurate, show that on February 4, 1964 Judge Hall sustained a "Motion for order to examine defendant's metal state" filed January 30, 1964 by petitioner's counsel. That motion made no mention of V.A.M.S. § 552.020.

We noted that the pretrial motion filed on behalf of the petitioner for a psychiatric examination alleged that his attorney had "numerous conferences with defendant;" that "during each of said conferences, defendant has been unable to comprehend the questions asked him;" and that "he is unable to understand and comprehend that he is charged in this Court with first degree murder."

We further noted that Judge Hall granted that motion on February 4, 1966, specifically finding that "defendant should be given a psychiatric examination and that a report concerning his mental condition is necessary to a disposition of the Murder, First Degree charge now pending against defendant." The Clinical Director of State Hospital No. 2 at St. Joseph was directed to make

the examination and to file a written report. We then stated that:

Dr. G. S. Waraich, Acting Superintendent of State Hospital No. 2 at St. Joseph, wrote a letter to Judge Hall, quoted in part on page 900 of 391 S.W.2d. The transcript does not show, however, that any hearing of any sort was held at which that letter was ever introduced in evidence; at which Dr. Waraich was called as a witness; or at which it was ever judicially determined that petitioner was competent to stand trial. The transcript does not show that petitioner was ever afforded the opportunity to cross-examine Dr. Waraich or to offer evidence of his own, as was his right, on request, under V.A.M.S. § 552.020, ¶ 2. The transcript does not show whether petitioner contested the finding or that he was ever given an opportunity so to do. * * *

All the transcript shows is that two days after Judge Hall signed his order on February 4, 1964, the case was continued for the term and until March 9, 1964, the first day of the March 1964 Term; was on that day reset for trial on March 23, 1964; and that the trial in fact commenced before Judge Jensen on March 30, 1964, without any notice being made of Judge Hall's order for examination for competency to stand trial.

Although counsel for the petitioner later introduced Dr. Waraich's letter in evidence (Tr. 120), neither he nor anyone else apparently knew or remembered before the trial commenced that Judge Hall had ever sustained a defense motion for mental examination; that a report had been made by the examining doctor; or that no hearing or judicial determination of any sort had ever been held to determine whether petitioner was mentally competent to be tried. [261 F.Supp at 74].

We further noted, however, that petitioner's counsel at the trial "[i]n both his opening statement and his closing argument * * * indicated his continuing belief that defendant was incompetent to stand trial." We quoted the appropriate pages of the transcript which showed petitioner's counsel's consistent protest, from the beginning of the trial to its end, that "the man is not competent to cooperate with me" (Tr. 119) and his purported justification that "I presented no evidence because this man can not cooperate with me" (Tr. 148).

We stated in *Brizendine I* that "[t]he question of whether petitioner should have been tried at all was not some sort of hidden question." We stated the following in regard to the controlling federal standard:

Pate v. Robinson, 383 U.S. 375 at 378, 86 S.Ct. 836, at 838, 15 L.Ed.2d 815 (1966), reiterated the well established rule that "the conviction of an accused person while he is legally incompetent violates due process, Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), and that state procedures must be adequate to protect that right." That case also held that "[t]he [trial] court's failure to make such inquiry * * * deprived Robinson of his constitutional right to a fair trial" (383 U.S. at 385, 86 S.Ct. at 842) and that the failure of Illinois to give an accused "an adequate hearing on his competence to stand trial" required the federal court to issue its writ of habeas corpus unless the accused was granted a new trial within a reasonable period of time (383 U.S. at 386, 86 S.Ct. at 842). [261 F.Supp. at 74–75].

We did not, however, apply that standard to the factual situation apparently established by the transcript on direct appeal. We noted, however, that:

The question of whether or not the procedures followed in regard to defendant's competency to stand trial were in accord with due process is not going to go away. We should not, however, exercise our power and jurisdiction to make further inquiry into that question * * * until after

the Missouri courts have been given an opportunity to pass on that question. [261 F.Supp. at 75].

When the case reached the Supreme Court of Missouri for the second time on petitioner's Missouri Rule 27.26 appeal, that court appropriately recognized that the principles stated in Pate v. Robinson were applicable. We must, however, find and conclude that it refused properly to apply those principles to the undisputed relevant facts established in the state court trial and post-conviction proceedings.

### III.

The Supreme Court of Missouri appropriately stated that petitioner's "claim for relief is based upon the trial court's failure to conduct a hearing and rule upon his competency" (433 S.W.2d at 326). On page 334 of 433 S.W.2d, that court reiterated that "[t]he ground for relief * * * is that the failure of the trial court to conduct a hearing and pass upon the issue of his competency to stand trial violated the requirements of due process of law as set down in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815."

The Supreme Court of Missouri accepted the following findings of the state trial court:

On January 31, 1964, the Court sustained Defendant's motion for a mental examination and directed the Defendant to be delivered to State Hospital No. 2 at St. Joseph, Missouri.

\* \* \* \* \* \*

Following Defendant's return from State Hospital No. 2, no hearing was held by the Court to determine Defendant's competency to stand trial as provided for by Section 552.020, V.A.M.S.

\* \* \* \* \* \*

Chapter 552 of the Missouri Statutes became effective in October, 1963, and was applicable to the arraignment and other proceedings involving Defendant Brizendine. [433 S.W.2d at 330].

The Supreme Court of Missouri quoted the following from petitioner's counsel's statement in the trial court in support of his motion for a competency examination:

Well, sir, first of all, I have seen him, since I became his attorney about two months ago, at least twelve to sixteen times. I did not know the man, but the minute that I was called by some friends of his, why, everybody told me that he was using "goofballs," that he's crazy. I talked to him; I couldn't get him to understand this is a serious matter, this is a First Degree Murder that may involve his life, and he would laugh, just shake it off like it was nothing. Then he would sit down and write me letters telling me how to try the case and what alibi to put up. Of course, a lot of them do that. I went back and said, "Will you sit down and talk to me? I want to know how it happened. You can trust me; I want to know." He started laughing, changed the subject, telling me he was a bad boy, he was discharged from the Marines, a dishonorable discharge, because he was mentally sick. He didn't use the word "mentally," because he was sick. I said, "Tell me when you joined, when you were discharged." I couldn't ascertain the time, if he was in the Marine Corps or if he was discharged.

I went back and talked to him again, and from his actions, appearance and speech, and refusal to cooperate with me, I have come to the conclusion, in my opinion, that the man needs mental examination to see whether he can properly defend this charge. [433 S.W.2d at 324].

The Supreme Court of Missouri also quoted the following portion of the Assistant Prosecuting Attorney's statement made to Judge Hall at the same time:

Strictly for the Court's edification, and just based upon what I know about the man, he has been, as far as I know, if not on hard narcotics, has been on "goofballs" for I don't know

how long; in fact, was convicted of it. The conviction was set aside because of error in the instructions. He had been convicted at the time he was called to testify as a witness for George Lawrence Watson, whom I was trying, and so I saw "Flapjack," as we call him, in the courtroom, on the stand. I mean this doesn't—I don't say the man is mentally unstable, but based upon what I know of him, he is goofy. If that is mentally unstable, I don't know. [Ibid].

Dr. Waraich's report showed on its face that "psychometric studies give him an I.Q. of 74 (WAIS) which means that he is functioning within the borderline range of intellectuality;" that "he shows acting out behavior disorder with symptoms of alcoholism, drug addiction, eccentricities, querulousness and hypochondriasis;" and that "under extreme stress and frustration he may develope psychotic behavior" [Tr. 170–171].

Dr. Waraich's diagnosis was "Personality Pattern Disturbance, Schizoid Personality" [Tr. 171]. The Supreme Court of Missouri quoted only the conclusory portion of Dr. Waraich's report in 391 S.W.2d at 900, in its affirmance on direct appeal, and in 433 S.W.2d at 324, which included the following "Recommendations:" [1]

1) This patient is not psychotic or insane. There is no evidence of neurosis. He shows a mild degree of mental deficiency which is not disabling.

1. Judge Seiler, in his dissenting opinion, appropriately pointed out "all the psychiatrist is competent to do is to render a medical report." Section 552.020 does not authorize the physician appointed under that section to make any judicial determination or "recommendations" to the trial court; that statute requires that he is only to file a "report" of his examination. Inappropriate psychiatric reports present problems of increasing judicial concern. The Court of Appeals for the District of Columbia noted in Green v. United States (en banc 1967), 128 U.S.App.D.C. 408, 389 F.2d 949, 955 that:

In determining competency for trial the court must have adequate information on which to base a decision. In 1965, after *Whalem* and the first *Green* case, the Judicial Conference, after study, adopted the following recommendation of its committee on mental examinations:

The report of a court-ordered pretrial mental examination should be made in substantial detail, recounting what was done to get at the facts concerning the accused's mental condition and what those facts are, not merely the conclusions the psychiatrists have drawn from the facts.

Judge Skelly Wright added in his concurring opinion that:

The Committee clearly explained what "substantial detail" meant. * * *

* * * * *

The Committee also requested that whenever possible the competency report contain the following additional information: (a) Is the accused oriented as to time, place and events? (b) Is the accused able to describe events connected with the alleged crime? (c) Is the accused willing to cooperate with his counsel? (d) Will the accused be able to follow the evidence? (e) Will the accused be able to assist counsel in evaluating the testimony of witnesses? (f) If the trial is expected to be a long one, will the accused be able to meet the demands made upon him? (g) If the accused is unwilling to participate in the examination process, is this refusal the result of a mental disease or defect? * * *

[I]t is clear that more information must be made available if we are to have informed judicial, as distinguished from medical, decisions on competence.

And particularly apropos of this case in which the physician's report used the conclusory language that petitioner had "adequate intellectual capacity to assist his counsel," see Chief Judge John R. Brown's comment in Floyd v. United States, (5th Cir. 1966) 365 F.2d 368, 376, that "it is difficult to reconcile the report's boiler-plate conclusion that Appellant is 'intellectually' able to understand the nature of the proceedings and assist counsel in his defense with the specific findings that Appellant has 'extremely poor' judgment, 'ludicrous * * * reasoning,' and an inability to 'control impulses, accept frustration, delay gratification and * * * relate to others.'"

2) He has adequate intellectual capacity to assist his counsel in the conduct of his legal defense.

3) Therefore, we respectfully suggest that his case be handled through the ordinary channels of criminal law. [433 S.W.2d at 324–325].

The state trial court concluded as a matter of law that:

Even though no hearing was held to determine Defendant's competence, in view of Defendant's counsel's satisfaction with the report, Defendant was not prejudiced by the absence of a hearing on his competency to proceed nor was there any evidence to indicate other than that the Defendant was competent to stand trial. [433 S.W.2d at 331].

The Supreme Court of Missouri sustained that trial court conclusion in the face of its own determination that "[t]he motion for pretrial examination and statement of counsel in support of such motion showed a substantial doubt as to Brizendine's competency at that time and a reasonable basis for such doubt" [433 S.W.2d at 332], and in the face of its determination that "[c]ompetency to stand trial is determined in accordance with § 552.020" [433 S.W.2d at 335].

The Supreme Court of Missouri's refusal to apply Pate v. Robinson to the undisputed factual situation presented was based on two reasons. It stated its first reason as follows:

Examination of the court's opinion in Pate v. Robinson, *supra,* shows the significance of the absence, in this case, of substantial support for the claim of incompetency to stand trial. In *Pate,* there was evidence on a broad scale relating to the defendant's mental capacity. The defendant had had a long history, adduced at the trial, of behavior evidencing mental illness. The Supreme Court held that,

in such circumstances, the trial court had the duty to consider and pass upon the competency of the defendant to stand trial, regardless of the absence of request by counsel for either the state or the petitioner. That it was the large mass of evidence which produced such requirement is obvious from subsequent cases in which it has been held that a mere suggestion of incompetency to proceed is not sufficient to invoke the *Pate* rule. United States ex rel. Rizzi v. Follette, 2 Cir., 367 F.2d 559, 561; Hawks v. Peyton, 4 Cir., 370 F.2d 123, 125; Wilson v. Bailey, 4 Cir., 375 F.2d 663, 667–669. [433 S.W.2d at 335].

The Supreme Court of Missouri stated its second reason as follows:

Here, although defendant's incompetency had been suggested, psychiatric examination produced the conclusion of competency and was sufficient to warrant trial, in the absence of further objection. See Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812; Heard v. United States, D.C.D.C., 263 F.Supp. 613. [Ibid].

Neither of those reasons properly distinguishes Pate v. Robinson.

### IV.

As Judge Seiler pointed out in his dissent, the factual situation presented in Pate v. Robinson was comparable to that presented in this case.[2] Robinson was convicted of murder and sentenced to life imprisonment. His conviction was affirmed by the Supreme Court of Illinois in 1961, see People v. Robinson, 22 Ill.2d 162, 174 N.E.2d 820, and certiorari denied by the Supreme Court in 1962, see 368 U.S. 995. Thereafter, Robinson filed a petition for federal habeas corpus, the denial of which was reversed by the Court of Appeals for the Seventh Circuit in United States ex

2. Judge Seiler stated:
   As in Pate v. Robinson, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815, the record in the first trial shows that defendant's then counsel insisted throughout the trial that defendant's fitness to proceed, his competency to cooperate in his defense, was very much in issue. [433 S.W.2d at 337]

rel. Robinson v. Pate, 345 F.2d 691. The Supreme Court affirmed.

The factual situation presented showed that Robinson's trial counsel, as did Brizendine's, "raised the issue of his incompetence to stand trial" [383 U.S. at 376, 86 S.Ct., at 837]. On direct appeal, the Supreme Court of Illinois held that because "no hearing on mental capacity to stand trial had been requested" and because "the evidence failed to raise sufficient doubt as to his competence to require the trial court to conduct a hearing on its own motion," that court affirmed the state trial court's rejection of Robinson's claim that he had been "deprived of due process of law under the Fourteenth Amendment" [383 U.S. at 376–377, 86 S.Ct., at 837].

The Supreme Court of the United States flatly held that "Robinson was constitutionally entitled to a hearing on the issue of his competence to stand trial" [383 U.S. at 377, 86 S.Ct., at 838]. Mr. Justice Clark first noted that "[t]he State concedes that the conviction of an accused person while he is legally incompetent violates due process, Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), and that state procedures must be adequate to protect this right," [383 U.S. at 378, 86 S.Ct., at 838].

The State of Illinois insisted, however, that (a) "Robinson intelligently waived this issue by his failure to request a hearing on his competence at the trial" and (b) "that on the basis of the evidence before the trial judge no duty rested upon him to order a hearing *sua sponte*." The State also relied upon the fact that it was stipulated that "Dr. William H. Haines, Director of the Behavior Clinic of the Criminal Court of Cook County, would, if present, testify that in his opinion Robinson knew the nature of the charges against him and was able to cooperate with counsel when he examined him two or three months before trial."

We have noted the Supreme Court of Missouri's approval of the state trial court's conclusion that "in view of Defendant's counsel's satisfaction with the report, Defendant was not prejudiced by the absence of a hearing." Judge Seiler, in his dissent, stated that "I do not believe it can fairly be said that defendant's then counsel was satisfied with the report" [433 S.W.2d at 337].[3]

It is not necessary for this Court to resolve the conflict between the judges of the Missouri Supreme Court because it is totally irrelevant whether petitioner's counsel may or may not have been "satisfied" with the report. The notion that a defendant's federally guaranteed constitutional rights can be waived by his lawyer's satisfaction was laid to rest over thirty years ago in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). That principle was reiterated in Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), when the latter case stated:

The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461—"an intentional relinquishment or abandonment of a known right or privilege"—furnishes the controlling standard. If a habeas applicant, *after consultation with competent counsel or otherwise*, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or

---

**3.** Judge Seiler accurately quoted petitioner's counsel in his opening statement, a later statement he made to the jury that he would prove "this man is incompetent," and his express challenge in final argument to the conclusory statement in Dr. Waraich's report that petitioner had "adequate intellectual capacity to assist his counsel." Defense counsel stated: "That, I will not accept."

by some other means, of the facts bearing upon the applicant's default. Cf. Price v. Johnston, 334 U.S. 266, 291, 68 S.Ct. 1049, 92 L.Ed. 1356. *At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner.* Cf. Carnley v. Cochran, 369 U.S. 506, 513–517, 82 S.Ct. 884, 8 L.Ed.2d 70; Moore v. Michigan, 355 U.S. 155, 162–165, 78 S.Ct. 191, 2 L.Ed.2d 167. A choice made by counsel *not participated in by the petitioner* does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question. E. g., Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367. [372 U.S. at 439, 83 S.Ct., at 849.] [Emphasis ours.]

Of course, there is no evidence in this case that the petitioner ever "understandingly and knowingly consulted with competent counsel." Indeed, the Supreme Court of Missouri reliably found on direct appeal that neither defense counsel, the prosecuting attorney nor the trial court even were aware of petitioner's rights under either state or federal law. As pointed out in Judge Seiler's dissent, it is more than a little difficult to find that a defendant may be advised of his rights by somone who has no knowledge of what those rights may be. Pate v. Robinson disposed of the waiver argument presented in that case by stating:

> The State insists that Robinson deliberately waived the defense of his competence to stand trial by failing to demand a sanity hearing as provided by Illinois law. But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his right to have the court determine his capacity to stand trial. See Taylor v. United States, 282 F.2d 16, 23 (C.A. 8th Cir. 1960). [383 U.S. at 384, 86 S.Ct., at 841].

Having thus ruled against Illlinois' first contention, Mr. Justice Clark stated that "in any event, the record shows that counsel throughout the proceedings insisted that Robinson's present insanity was very much in issue." He then proceeded to examine the evidence adduced at trial to determine whether Illinois' second contention—"that on the basis of the evidence before the trial judge no duty rested upon him to order a hearing *sua sponte*"—was tenable.

Because, unlike the situation in Brizendine's case, there had not been a prior judicial determination in Robinson's case whether substantial doubt existed in regard to Robinson's competency to stand trial, the Supreme Court of the United States examined the evidence adduced at Robinson's trial with care. It determined that the evidence adduced at that trial entitled Robinson to a hearing and concluded that "the court's failure to make such inquiry thus deprived Robinson of his constitutional right to a fair trial" [383 U.S. at 385, 86 S.Ct., at 842]. The Court conceded that "the stipulation of Dr. Haines' testimony was some evidence of Robinson's ability to assist in his defense" but determined "[I]t could not properly have been deemed dispositive on the issue of Robinson's competence" [383 U.S. at 386, 86 S.Ct., at 842]. It stated the applicable federal constitutional rule in a situation in which a pretrial determination has not been made that a defendant is entitled to a competency to stand trial hearing as follows:

> Where the evidence [adduced at trial] raises a *"bona fide* doubt" as to a defendant's competence to stand trial, *the judge on his own motion must* \* \* \* conduct a sanity hearing \* \* \*.

■ The rationale of Pate v. Robinson *is based on the premise that whenever any circumstances at any stage of a criminal proceeding produces a bona fide* doubt about whether or not a defendant is in fact competent to stand trial, that doubt must be resolved by an appropriate

evidentiary hearing. Due process requires that the trial judge, on his own motion, must conduct such a hearing in order that a defendant incompetent to stand trial is not tried.

Pate v. Robinson's rationale makes clear that a *bona fide* doubt as to a defendant's competency to stand trial may be established in a number of different ways. The factual situations fall into two broad general categories: (a) the trial court grants a motion for a psychiatric examination; and (b) the trial court does not act, either *sua sponte,* upon motion, or otherwise. If the trial court grants a motion as in situation (a), it is obvious that a *bona fide* doubt is immediately established as a matter of fact and as a matter of law in that particular case; otherwise the trial judge would not have granted the motion. It is also obvious that if, after a psychiatric examination is ordered under Missouri law, and if, as in this case, the report's conclusion of competency is contested, an evidentiary hearing will always follow as a matter of course, provided the trial court is familiar with and follows the requirements of Section 552.020, V.A.M.S.[4]

It follows that when a trial court orders a psychiatric examination, a *bona fide* doubt is judicially established. In Missouri, the trial judge will have made an express finding that "there is reasonable cause to believe that the accused has a mental disease or defect excluding fitness to proceed * * *" Section 552.020(2), VA.M.S.

In such a case there is no occasion whatever for an appellate court or for a postconviction court to make any inquiry into whether the evidence adduced at trial did or did not corroborate the trial judge's definitive judicial determination of *bona fide* doubt. The *bona fide* doubt criteria of Pate v. Robinson need be established only once, not twice, in the application of the principles of that case.

-[6] It is only in situation (b) that it becomes necessary for an appellate or postconviction court to study the trial record, or to consider other evidence, in order to determine whether the defendant's *history and actions before, during, or after the trial,* should have raised a *bona fide* doubt of his competency to stand trial. If the circumstances establish that such a doubt should have been noticed, Pate v. Robinson requires a new trial because of the trial judge's failure to have acted *sua sponte* at some point during the trial of that particular case.

Application of the principles enunciated in Pate v. Robinson to the factual circumstances presented by this case is not difficult. We defer, under principles stated in Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), to the Supreme Court of Missouri's finding of fact that petitioner's pretrial motion and the statement of his counsel "showed a substantial doubt as to Brizendine's competency at that time and a reasonable basis for such doubt."

We conclude that the "substantial doubt" found by the Supreme Court of Missouri is the legal equivalent of the *"bona fide* doubt" stated in the rule of Pate v. Robinson. It being undisputed that the state trial judge failed to conduct the evidentiary hearing to which the petitioner was entitled both as a matter of state law and of federal constitutional right, it follows that petitioner is entitled to appropriate federal habeas corpus relief on the first ground stated in his petition.[5]

---

4. That Section explicitly provides that: "If the finding is contested the court *shall* hold a hearing on the issue" [emphasis ours]. We believe that the rationale of Pate v. Robinson is broad enough to require that a hearing must be held under the circumstances stated should a particular state statute fail to

so provide. We need not reach that question because the Missouri statutes are fully and appropriately in accord with the requirements of due process.

5. In Appendix A attached hereto we discuss in detail the cases relied upon by the Supreme Court of Missouri and the

### V.

Under the circumstances of this case, it is almost axiomatic that petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the Constitution of the United States. On direct appeal the Supreme Court of Missouri stated that it was quite apparent that petitioner's counsel was not aware of petitioner's rights under Chapter 552 of the Missouri statutes.

On the Missouri Rule 27.26 appeal, however, the Supreme Court of Missouri noted that "[o]n the incompetence of trial counsel issue, the trial court made no express finding upon the allegation that Konomos was not familiar with Chapter 552, R.S.Mo" [433 S.W.2d at 333].[6] The majority opinion nevertheless conceded that "[t]he record of the trial as well as the record on the hearing of this motion would lend support for the appellant's allegation of ignorance on the part of his counsel" [433 S.W.2d at 333]. The majority opinion attempted to avoid the question of trial counsel's ignorance of the applicable law by suggesting that "the appellant may not rest solely upon such ignorance" unless it somehow blotted out a substantial defense on the merits.

Without suggesting how inquiry into the merits could be appropriate in a case in which it might have been judicially determined that the defendant should never have been put to trial, the Supreme Court of Missouri nevertheless concluded that "if appellant is to convict his counsel of inadequate representation, the appellant must show there was some basis for asserting the defense of which his counsel allegedly was ignorant" [433 S.W.2d at 334].

Judge Seiler, in his dissent, was the only Missouri judge who considered the impact of trial counsel's ignorance of Chapter 552. He concluded that "defendant's representation by counsel was below the acceptable standard." [433 S.W.2d at 338].[7] Judge Seiler also appropriately directed attention to trial counsel's ignorance of the provision of Missouri law which provided that an indigent was entitled as a matter of right to his own psychiatric examination at state expense. He stated:

> During the state's closing argument, the prosecutor was pointing out that if there were any question of insanity, defendant's lawyer would have psychiatrists in court to testify, to which counsel objected, "because we haven't got the money or the means." *Under § 552.020 defendant was entitled as a matter of course to an examination by a physician of his own choosing and the expense could 'be taxed as costs under § 552.080.* [433 S.W.2d at 337] [Emphasis ours.]

Our consideration of all the facts and circumstances in evidence convinces us that it is impossible to defer to the state trial judge's implied finding that petitioner's counsel's failure to insist that the required competency hearing be held was somehow a matter of "trial tactic" (whatever may be implied by that loose language). Such a finding must have been based on trial counsel's postcon-

---

reasons why we must conclude those cases do not support the conclusions stated by that court.

6. The issue is not "the incompetence of trial counsel;" it is whether trial counsel, who may or may not be said to be generally competent, did or did not render the particular petitioner involved in this particular case the effective assistance required by the Constitution. The Supreme Court of Missouri properly ignored the state trial judge's finding that "Mr. Michael Konomos has been a member of the Missouri Bar since 1923 and has had extensive experience in the practice of criminal law." (433 S.W.2d at 330).

7. Judge Seiler's conclusion on the Pate v. Robinson question was stated as follows: "This failure to be aware of the statute cannot, of course, eliminate the requirement of a hearing by the court on the issue of fitness to proceed, where as here, it is apparent defendant was and is contesting the finding made by the examining physician." [433 S.W.2d at 336]. That conclusion, as we have stated, was correct.

viction justification that he lied to Judge Hall, both orally and in writing, when he moved for a pretrial psychiatric examination. We agree with the rationale of Judge Seiler's discussion of how Mr. Konomos' postconviction testimony must be treated [433 S.W.2d 337–338].

■ Because neither the state trial judge nor the majority opinion of the Supreme Court of Missouri on the 27.26 appeal made any finding to which we may defer, we independently find and determine that petitioner's trial counsel was in fact ignorant of Chapter 552 and also ignorant of petitioner's right to have independent psychiatric assistance at state expense. Any other finding, in our judgment, would be without adequate support in the record. See and compare Parker v. Sigler (8th Cir. 1969), 413 F.2d 459, decided July 18, 1969, but not yet reported.

We conclude that under the circumstances, petitioner's trial counsel could not possibly render petitioner the effective assistance of counsel guaranteed by the Constitution. In Goodwin v. Swenson (W.D.Mo.1968), 287 F.Supp. 166, we stated and applied the controlling federal standards applicable to a defendant's constitutional right to the effective assistance of counsel. We adopt what was said there by this reference.

The controlling principle of law was stated by Circuit Judge Skelly Wright, sitting as a District Judge, in Poe v. United States, (D.D.C.1964) 233 F.Supp. 173:

Where the defense is substantially weakened because of the unawareness on the part of defense counsel of a rule of law basic to the case, the accused is not given the effective representation guaranteed him by the Constitution. People v. Ibarra, 60 Cal.2d 460, 34 Cal.Rptr. 863, 386 P.2d 487 (1963) (Traynor, J.). [233 F. Supp. at 178].

The Supreme Court of Missouri failed properly to apply principles stated in Schaber v. Maxwell, (6th Cir. 1965) 348 F.2d 664; Poe v. United States, *supra;* and People v. Ibarra, *supra,* which it cited. None of those cases turned on the question of whether, as stated by the Supreme Court of Missouri, "the ignorance of the attorney * * * produced * * * prejudice to the defendant" [433 S.W.2d at 334].

For a case with a strikingly similar factual situation, see Caudill v. Peyton (4th Cir. 1966), 368 F.2d 563.[8]

Under the circumstances, we find and determine that petitioner was denied the effective assistance of counsel guaranteed him by the Sixth and Fourteenth

---

8. Sessoms v. United States (1965), 123 U.S.App.D.C. 284, 359 F.2d 268 and Kibert v. Peyton (4th Cir. 1967), 383 F.2d 566, 569, of course, state and apply the same rule.

See Jacobs v. United States (4th Cir. 1965), 350 F.2d 571, 573, for the cases which establish that an indigent defendant has a federal right to the services of a psychiatrist independent of a state statute such as Section 522.020. That case held:

Unquestionably in the proceedings below the defendant, if financially able, would have had the right to call a privately retained psychiatrist as a witness. It is obvious that only his inability to pay for the services of a psychiatrist prevented a proper presentation of his case. The Supreme Court has unmistakably held that in criminal proceedings it will not tolerate discrimination between indigents and those who possess the means to protect their rights. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed. 2d 811 (1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1961). In the circumstances shown, a substantial question having arisen as to the defendant's mental capacity at the time of trial, the appointment of a psychiatrist at government expense was required.

Amendments to the Constitution of the United States. Petitioner is therefore independently entitled to federal habeas relief on the second ground stated in his petition.

## VI.

We fully covered the problem of what relief is appropriate in a Pate v. Robinson situation in Goodwin v. Swenson, *supra*. In this case we need only direct attention to Mr. Justice Clark's determination in Pate v. Robinson that:

> Having determined that Robinson's constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial, we direct that the writ of habeas corpus must issue and Robinson be discharged, unless the State gives him a new trial within a reasonable time.
>
> * * *
>
> * * * * * *
>
> If the State elects to retry Robinson, it will of course be open to him to raise the question of his competence to stand trial at that time and to request a special hearing thereon. In the event a sufficient doubt exists as to his present competence such a hearing must be held. If found competent to stand trial, Robinson would have the usual defenses available to an accused. [383 U.S. at 387, 86 S.Ct., at 842–843].

## ORDER

For the reasons stated, it is

Ordered that petitioner be released from his present confinement in the Missouri Department of Corrections and be permanently discharged from custody at the end of ninety (90) days from the date of this order, unless within that time the affirmance of petitioner's conviction is set aside and declared to be invalid and the state trial court is appropriately directed to grant petitioner a new trial. It is further

Ordered that an appropriate order shall be entered by the state trial court within the said ninety (90) day period which shall set the date upon which an appropriate competency to stand trial hearing will be held, and if, but only if, petitioner is judicially found to be competent to stand trial at such hearing, the date upon which said trial shall commence. It is further

Ordered that nothing stated in this opinion or order shall be construed as any limitation on petitioner's right to assert any defense available to an accused in the event petitioner is judicially determined to be competent to stand trial and the case is thereafter tried on the merits. It is further

Ordered that this Court retain jurisdiction of this cause pending further developments. The Office of the Attorney General shall keep this Court advised of any and all action taken by the State of Missouri in connection with this order and shall, if necessary, make appropriate application for any extension of the ninety (90) day period of time above provided before the expiration of said period. No extension will be granted except for good cause shown which shall be stated with particularity in any application filed.

## APPENDIX A

The federal cases upon which the Supreme Court of Missouri purported to rely do not support that court's conclusion that a large mass of evidence need be introduced at a trial on the merits before the rule of Pate v. Robinson is to be applicable. Those cases are not based on the Supreme Court of Missouri's notion that a "mere suggestion of incompetency to proceed is not sufficient to invoke the *Pate* rule." Nor do those cases support the similar notion that because the "psychiatric examination produced the conclusion of competency * * * the absence of further objection * * * was sufficient to warrant trial."

Whalem v. United States (1965) 120 U.S.App.D.C. 331, 346 F.2d 812, was, of course, decided before Pate v. Robinson and obviously did not involve an application of the constitutional rule

enunciated in that case. Heard v. United States, (D.C.D.C.1967) 263 F.Supp. 613 (a case later reversed because of the trial court's failure to hold a Section 2255 evidentiary hearing, see 390 F.2d 866 (1968)) was properly distinguished by Judge Seiler in his dissenting opinion. See 433 S.W.2d at 337. United States ex rel. Rizzi v. Follette (2nd Cir. 1966), 367 F.2d 559, simply held that federal due process did not require a state trial judge, *sua sponte,* to hold a competency hearing under the particular circumstances of that case.

That case, in our judgment, is clearly distinguishable from this on its facts. Appropriate state procedures were in fact followed to protect Rizzi's right not to be tried if he were found to be in fact incompetent; state procedures to determine whether Brizendine was in fact incompetent were totally ignored in this case.

Hawks v. Peyton (4th Cir. 1966), 370 F.2d 123, involved federal habeas corpus review of a state trial judge's refusal to order a competency hearing on the basis of the evidence adduced at a hearing on that motion. Such a question obviously is not presented in this case because Judge Hall granted Brizendine's motion and the Supreme Court of Missouri expressly found that such motion and counsel's statement in support "showed a substantial doubt as to Brizendine's competency * * * and a reasonable basis for such doubt" [433 S.W.2d at 332].

Wilson v. Bailey (4th Cir. 1967), 375 F.2d 663, the last case cited by the Supreme Court of Missouri, involved factual circumstances which showed again, contrary to the undisputed facts of Brizendine's case, that "[n]othing occurred at the trial to indicate to the trial judge the possibility of lack of competence of Wilson to stand trial" [375 F.2d at 667]. Indeed, the Court found that "[a]t the trial neither Wilson nor anyone else suggested to counsel that Wilson might not be competent to stand trial" [375 F.2d at 668], and that "it was never contended at Wilson's trial that he was incompetent to stand trial" [375 F.2d at 669].

We conclude that all the lower federal court cases relied upon by the Supreme Court of Missouri are clearly distinguishable from the circumstances of this case.

Because the Supreme Court of Missouri purported to rely primarily upon cases decided by the Courts of Appeals for the Fourth Circuit and the District of Columbia, we direct attention to illustrative cases from those two courts which reflect proper application of the controlling federal standard.

See Pouncey v. United States (1965), 121 U.S.App.D.C. 264, 349 F.2d 699, ("the judge allowed the trial to proceed without even an intimation that a problem was presented"); Sessoms v. United States (1966), 123 U.S.App.D.C. 284, 359 F.2d 268 (a case, like this, in which the defendant's borderline I.Q. of 75 was apparent on the face of the psychiatric evaluation);[9] Hansford v. United States (1966), 124 U.S.App.D.C. 387, 365 F.2d 920, ("history of narcotic use and addiction");[10] and Kibert v. Peyton (4th Cir. 1967), 383 F.2d 566, ("the attorney prior to trial had serious doubts about Kibert's mental condition.")

9. Dr. Waraich's report showed on its face that Brizendine's I.Q. was 75, one point below Sessoms, and that "he is functioning within .the borderline range of intellectuality."

*Sessoms'* per curiam reversal underlined the proposition that under Pate v. Robinson, a psychiatrist's report which reports a borderline I.Q., standing alone, prevents a trial judge from relying on a conclusion of competency which may be stated in a psychiatric report and that due process requires that an appropriate plenary evidentiary hearing must be conducted under that circumstance before a defendant is put to trial. See also Caudill v. Peyton, *supra,* in which another borderline I.Q. of 75 was involved.

10. Dr. Waraich's report showed on its face that petitioner "shows acting out behavior disorder with symptoms of alcoholism [and] drug addiction."

We think it clear that the relevant cases from the Court of Appeals for the District of Columbia and for the Fourth Circuit establish that the Supreme Court of Missouri's conclusion that the undisputed factual situation here presented "a mere suggestion of incompetency" and its conclusion that the circumstances presented were not "sufficient to invoke the *Pate* rule" [433 S.W.2d at 335] are untenable. We so hold.

The same thing, of course, must be said in regard to the Supreme Court of Missouri's notion that because "[the] psychiatric examination produced the conclusion of competency * * * in the absence of further objection * * * [such a report] is sufficient to warrant trial" [433 S.W.2d at 335]. We so hold.