365 F.Supp. 1294 (1973)
Roy E. RAND, Jr., Petitioner,
v.
Harold R. SWENSON, Warden, Respondent.
No. 73 C 326(1).
United States District Court, E. D. Missouri, E. D.
October 24, 1973.
*1295 Roy E. Rand, Jr., pro se.
John C. Danforth, Atty. Gen., State of Mo., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

MEMORANDUM
MEREDITH, Chief Judge.
Petitioner brought this action pursuant to 28 U.S.C. § 2254, alleging that he is being detained under a conviction and sentence that is illegal and void in that it is based on a verdict that was rendered in a trial in which certain of his constitutional rights were violated. The writ of habeas corpus will be issued as later set forth.
Petitioner was convicted of second-degree murder and sentenced to twenty-five years imprisonment. The statement of facts the defendant gave, as set out in an unpublished per curiam opinion, No. 34864 of the Missouri Court of Appeals, St. Louis District, is as follows:
". . . defendant and his wife occupied a basement apartment in the *1296 residence of Beulah Aernouts, but were allowed free access to the entire house. On May 22, 1971, defendant and Arnold Wells and William Thomas, both of whom were friends of Mrs. Aernouts, were seated in her kitchen. Defendant refused a drink offered by Thomas, and the latter struck defendant, knocking him down. Wells separated the two. Both Thomas and Wells left the room and defendant was in the act of washing his face at the kitchen sink when Thomas reappeared and asked defendant to go outside and continue the fight with him. Defendant declined to do so, and while bent over the sink Thomas struck defendant on the head with a club, presumably the leg of a chair that had collapsed during the earlier scuffle. Thomas also body-punched defendant, and attempted to drag defendant across the kitchen floor towards the back door, but before they reached it, defendant stabbed Thomas with a knife defendant had grabbed off the kitchen sink. Defendant's defense was that he acted in self-defense."
The petitioner has divided his allegations of violations of his constitutional rights into four main contentions with various complaints under each. Each contention will be discussed as appropriate.
The first contention concerns psychiatric examinations and is the basis for the issuance of the writ in this case. This contention will be discussed fully later in this memorandum.
The second contention petitioner alleges is that the court erred in allowing the introduction of testimony of a prior shooting incident, and such testimony was so prejudicial and inflammatory that its admission denied him due process under the Fourteenth Amendment of the United States Constitution. This testimony was introduced at the trial to controvert the defendant's contention that he feared all kinds of weapons. Although the defendant contended that his fear was only of weapons in others' hands, the record shows that this is not the way the contention was originally introduced. The Government can clarify or contradict a subject, possibly inadmissible otherwise, that the defendant opens. United States v. Walker, 421 F.2d 1298 (3rd Cir. 1970). If there was any error in this instance, it was not such as to afford habeas corpus relief. United States ex rel. Choice v. Brierley, 460 F.2d 68 (3rd Cir. 1972); United States ex rel. Holliday v. Adams, 443 F. 2d 7 (2nd Cir. 1971).
The third contention of the petitioner is that his examination, cross-examination, and examination in surrebuttal of certain witnesses was unduly restricted. The examination in surrebuttal concerned a subject constituting an element of self-defense, and the trial court used its discretion in its ruling of improper surrebuttal. The cross-examination concerned showing the moral character of two of the state's witnesses, not their reputations for truth and veracity, and the trial court sustained the objection to this line of questioning. These rulings of the trial court are at most erroneous rulings which would not subject the conviction to collateral attack, Krantz v. Tinsley, 221 F.Supp. 994 (D.Colo.1963).
"It is only where the trial errors or irregularities infringe upon a specific constitutional protection or are so prejudicial as to amount to a denial of due process that a justiciable federal issue is presented in a habeas corpus proceeding." Atwell v. State of Arkansas, 426 F.2d 912, 915 (8th Cir. 1970).
Such issue is not presented in this instance.
The last part of the third contention is that the petitioner's examination of alleged inconsistent statements was unconstitutionally restricted. The transcript reveals that the court sustained an objection to the form of the question petitioner's counsel asked when attempting to show the inconsistent *1297 statement of one witness, and the question was not restated or rephrased. The question concerning the alleged inconsistent statement of the other witness was objected to, withdrawn, and not restated. In these instances there is no action of the court to consider as unduly restricting this examination, and at most the errors or irregularities, if any, are not deprivations of due process, Krantz v. Tinsley, supra; Atwell v. State of Arkansas, supra.
The fourth contention of petitioner is that the communication of the court to the jury after the jury had agreed on the petitioner's guilt, but were undecided on his punishment, was a violation of petitioner's Fourteenth Amendment rights.
"The record shows that the following occurred in chambers, all counsel being present:
`THE COURT: Let the record show after approximately two hours and five minutes of deliberation, the jury buzzed and sent the following note up: "A verdict has been reached; the jury seems deadlocked on the length of punishment; if the Court assesses punishment, will that term of punishment include psychiatric treatment for his homosexual problem?" Signed Dale F. Poertner, Foreman. I propose to answer "In answer to the first portion of your inquiry, I refer you to Instruction No. 8."  and the second part "after sentencing defendant will be in the custody of the Missouri Department of Corrections." Do you disagree with that.
`MR. ORTBALS (defense counsel): Yes, I would disagree. Let me object to that. It is my belief in the light of the specific nature of the inquiry, which reflects an obvious jury concern, that I feel the specific question deserves a specific answer rather than a general one.
`MR. FREDERICKS: I would object to that, outside the scope of the Court's authority.
`MR. ORTBALS: The specific answer I would request is a simple "yes" or "no".
`THE COURT: I prefer to do it the way I did.
`MR. ORTBALS: Of course, I hope the record would show this. Let the record show I object to the Instruction No. 8, based on State v. Brown.'
"(Thereupon, the following was typed on the note sent to the Court by the jury and said note returned to the jury):
`Members of the Jury:
`In answer to the first portion of your inquiry, I refer you to Instruction No. 8.
`In answer to the second portion of your inquiry, after sentencing the defendant will be in the custody of the Missouri Department of Corrections.'
"In Instruction No. 8 the jury was told, in substance, that if it found the defendant guilty it should assess his punishment in accordance with other instructions of the court; and that if it agreed upon his guilt but was unable to agree upon the punishment to be assessed it might return a verdict that it had agreed as to the defendant's guilt but was unable to agree upon the punishment, and that in that event the court might assess the punishment."
The jury reached a verdict. The query was directed only at the punishment to be levied. Where guilt has been established even the giving of erroneous instructions concerning punishment have been held not to rise to the level of constitutional deprivations, Potter v. People of State of Oklahoma, 330 F.Supp. 1243 (E.D.Okl.1971). Any error in these instructions was not such as to deny petitioner a fair trial and, thus, not grounds for the issuance of a writ. Young v State of Alabama, 443 F.2d 854 (5th Cir. 1971); Linebarger v. State of Oklahoma, 404 F.2d 1092 (10th Cir. 1968); Shepherd v. Nelson, 432 F.2d 1045 (9th Cir. 1970).
*1298 However, the writ should issue in this case based on the petitioner's first contention, that petitioner was denied his Fourteenth Amendment rights by the refusal of the court to grant either a psychiatric examination or a pyschiatric hearing. The pertinent facts shown in the record are:
". . . that after the defendant had been indicted, arraigned, and pleaded not guilty his appointed counsels filed a motion in which it was alleged that counsel had reasonable cause to believe, gained from their observation of defendant, that defendant was suffering from some mental disease or defect so that he lacked the capacity to understand the proceedings against him or to assist in his defense; and that he was indigent. It was prayed that the court order and direct the sheriff to take the defendant to Malcolm Bliss Hospital for a psychiatric examination and that the doctors of that institution examine defendant and report their findings to the court. The bare record . . . shows that the motion was `. . . voluntarily withdrawn,' but, concededly dehors the record, counsel states in their brief that it was withdrawn by them `. . . after the vigorous objection of the defendant to the filing of said motion, . . .'
"As stated, defendant's trial theory, which counsel states was insisted upon by the defendant, was that of self-defense. Defendant took the stand, and while he was being vigorously cross-examined his counsel, out of the hearing of the jury, asked leave to withdraw the defense of self-defense and to be allowed to put on evidence to show the defendant's insanity. The court deferred an immediate ruling, but after the close of the State's rebuttal evidence, and before the defendant began the presentation of its surrebuttal, the subject of defendant's counsel's request for a psychiatric examination was again discussed, out of the hearing of the jury, and overruled by the court.
"At the same time that defendant's counsel filed his motion for a new trial they also filed a separate motion for the appointment of a psychiatrist in which they again alleged that based on their observation of defendant and on certain medical reports in their possession they believed that the defendant was suffering from some mental disease or defect so that he lacked the capacity to understand the nature of the motion for a new trial and was unable to assist in further pursuing his cause. It was further alleged that defendant was indigent and without funds to employ the services of a psychiatrist. Attached to that motion was the affidavit of defendant's counsel in which they stated that they had examined the records of St. Elizabeth's Hospital, Belleville, Illinois, which showed that defendant had been a patient in that institution from January 10, 1970 to February 3, 1970; that he had been treated by a Doctor Hornung, who had diagnosed the defendant's condition as `. . . "anxiety reaction, acute depression and emotionally unstable period" . . .'; and that the defendant had manifested suicidal tendencies and on January 10, 1970 had threatened to `leap out of a window.' In the affidavit it was also stated that the hospital record further reflected a heavy reliance on pills and drugs, and that the defendant was `"constantly demanding shots from hospital personnel throughout the course of his stay."' The affidavit also contained the statement that the records of the same hospital showed an admission of defendant from the St. Clair County Sheriff's office on February 16, 1971, and that while in custody of the sheriff, defendant had slashed his right wrist with a razor blade, inflicting a one and one-half inch laceration, which had to be closed with sutures." Per Curiam Opinion, Mo.Ct. of Ann., St.L. Dist. No. 34864
The motion for the appointment of a psychiatrist and the motion for a new *1299 trial showed the concern of petitioner's counsel with both the petitioner's sanity at the commission of the offense and his competency to stand trial. The record shows that the trial judge overruled these motions based on his own observations of the defendant during the trial. No psychiatrists or psychiatric examinations or reports were relied on to support this determination of competency, although Missouri statutes provided for the granting of psychiatric examinations by motion of the defendant or court on "reasonable cause" shown before sentencing. 552.020 RSMo 1969. The Missouri Court of Appeals, St. Louis District, said the evidence of incompetency was not sufficient to demonstrate "reasonable cause", and, noting the trial judge's observations, affirmed.
The test of "reasonable cause" to give a competency hearing is, in effect, the same as that expounded in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), in terms of "`bona fide doubt' as to a defendant's competence" as a prerequisite to ordering a competency hearing, State v. Brizendine, 433 S.W.2d 321 (Mo.Sup.Ct. En Banc 1968); Brizendine v. Swenson, 302 F.Supp. 1011 (W.D.Mo.1969). Since it is a violation of the right to a fair trial to try an incompetent, and it would be a contradiction in terms to say that incompetents can knowingly and intelligently waive their rights, the protection afforded incompetents by statute and case law must be granted where such "doubt" or "cause" is clearly demonstrated, Pate v. Robinson, supra. The critical question presented in this habeas corpus motion and on appeal, as the state court noted, is not whether Rand was competent or not, but whether there was sufficient "doubt" or "cause" for the court to believe that he was incompetent so as to order a psychiatric examination.
Based upon the insistence of the defendant's counsel that the defendant was incompetent to stand trial, combined with the facts related in the counsels' affidavit and the testimony of irrational behavior, a substantial doubt as to petitioner's competency was presented, Pate v. Robinson, supra; Brizendine v. Swenson, supra. The actions of the defendant during the trial, and the trial judge's observations, while relevant, are not the only factor, and "cannot obviate the need for a hearing on his competence." Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920, 924 (1966). Therefore, the petitioner's rights to a fair trial were violated in this instance by the total lack of a psychiatric examination or hearing to determine his competency to stand trial. This violation can only be corrected at this time by a new trial. Pate v. Robinson, supra; Hansford v. United States, supra.