**STATE of Missouri, Respondent,**

v.

**Donald Dale HOLT, Appellant.**

**No. 52444.**

Supreme Court of Missouri,
Division No. 2.

June 12, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Charles G. Hyler, Sp. Asst. Atty. Gen., Farmington, for respondent.

Henry W. Westbrooke, Jr., Springfield, for appellant.

EAGER, Judge.

Defendant was convicted by a jury of the offense of possessing an "apparatus, device or instrument for the unauthorized use of narcotic drugs," as proscribed by § 195.020, RSMo 1959, V.A.M.S. (to which revision all statutory references will refer). The Court found that defendant had previously been convicted, sentenced and imprisoned for a felony and sentenced him to imprisonment for a term of five years.

On this appeal, prosecuted by diligent and effective appointed counsel, three points are made, namely: (1) that defendant's arrest was illegal, that the search which resulted in the seizure of certain articles was unreasonable and void and that the evidence so taken should have been suppressed; (2) that assignments of defendant's amended motion for a new trial contesting the admission in evidence of the fruits of that search should have been sustained; and (3) that a mistrial should have been granted because of the prejudicial, voluntary statement of a witness. There is no contention that the evidence, as received, was not sufficient to support a conviction.

On December 29, 1966, at approximately 9:30 a. m., two officers of the Springfield Police Department arrested defendant and Jacqueline McDaris (consistently referred to as "Jackie") at her apartment on the second floor of a building at 1030 North Main; Detectives James Kitchell and Charles Green were the officers involved. Defendant was arrested on suspicion of tampering with a motor vehicle, although Kitchell also wanted to talk to him about his possible possession of a key to the city parking meters. Jackie had rented the apartment about December 5, and had paid all the rent; defendant had nothing to do with the rental or the rent. He apparently stayed there with her, but kept no clothes there; he had bought some groceries, and he had known Jackie for about eight or nine months. The domestic status of Jackie is not fully described; she was

18 years old, had a baby three or four months old, and the baby was in the apartment at the time in question. When Kitchell knocked on the apartment door noises were heard inside and, in perhaps two or three minutes, Jackie opened the door and let the officers in; the apartment consisted of two rooms, a combination bedroom and living room and a kitchen, with only one entrance. Defendant was sitting at the kitchen table, barefooted, wearing a pair of blue jeans and no shirt. Both defendant and Jackie were told that they were under arrest and that the apartment would be searched; defendant began arguing so violently that he was taken downstairs and left in a police car with one of the two additional officers who were then summoned. The two original officers and one of the additional ones then searched the apartment, with no objection whatever from Jackie.

They found various things, which we shall not designate by exhibit numbers; all were very specifically identified at the trial, by one or more of the officers. These things included: 10 paregoric bottles (1 or 2 oz.), most or all of which were found in the trash sacks in the kitchen; some small brownish wads of cotton which had been used for some purpose; a box of cotton; an eyedropper (with the extreme tip broken off); a glass tube which was obviously the cylinder of a smaller eyedropper, without the rubber bulb; the needle part of a hypodermic syringe, including a rather substantial metal head or base; this base was hollow and the end of either eyedropper could be inserted into it; a very fine wire was found with the needle apparently inserted in it. A straightened hairpin was also found inside the box of cotton. The needle and eyedropper were found behind some linoleum or oilcloth tacked on the wall over the kitchen counter; the glass cylinder was found in a trash sack. There was a little fluid in three or four of the paregoric bottles. At police headquarters Detective Kitchell noted various red "dots" on the inner side of defendant's forearms, perhaps ten or more on each arm; these were described as about the size of a pinhead.

At the trial the officers testified in detail to the finding and marking of these articles. They were all introduced in evidence. Upon the offer of each and all of the following articles, counsel for defendant stated affirmatively that *he had no objection:* the box of cotton; the hairpin; the small glass cylinder (part of an eyedropper); the 10 paregoric bottles; and the group of used wads or balls of cotton. When the hypodermic needle and the fine wire in it were offered, counsel objected on the ground that it was a "multiple" exhibit and that the information only charged possession of a "needle" and not a hypodermic needle. That objection was overruled. He objected to the offer of the eyedropper upon the supposed ground of insufficient identification only, and this was overruled. No objection was made to either of these or to any other exhibit on the ground that it or they were obtained as the result of an unreasonable or unlawful search. The only objection of that general nature was made to Detective Kitchell's testimony concerning his observation of the red spots on defendant's arms, namely, that any such investigation was not made pursuant to a lawful arrest. That evidence, however, concerned only the officer's observation of defendant's arms when they were visible to him, and no statement of defendant or property of defendant was involved.

Jackie McDaris testified: that she alone had rented the apartment and paid the rent; that defendant had stayed there with her since about December 5, and apparently at a previous apartment also; that he kept no clothes there; that she made no objection to the search; that she knew the articles here in question were in the apartment, but did not know their exact locations; that she had known defendant for eight or nine months and had seen him use these things at least 15 or 20 times, partly at a different location. She de-

scribed the method as follows: defendant would boil the paregoric in a pan for a few minutes, pour the remaining liquid on cotton in another small pan, then withdraw it "through the cotton" with the eyedropper; the needle was then inserted into defendant's arm and the eyedropper inserted into the opening in the base of the needle (before or after the insertion of the needle) thus injecting the fluid, she said, into the veins near the elbow. Jackie testified that she had talked with defendant and tried to get him to stop this, and that he had at one time broken up the needles, eyedroppers, etc., but had later resumed the practice. She had bought two or three bottles of paregoric for him at his request. Defendant had given himself such an injection on the night before his arrest.

A well qualified chemist, R. G. Taylor, analyzed material taken from four of the paregoric bottles, each separately; he testified that each sample contained morphine, which is an alkaloid of opium. He also described how the solvent, alcohol, could be readily boiled out of the paregoric, the camphor filtered out through cotton, and the needle and an eyedropper (with a little cotton padding at the connection) used to inject the resulting fluid. We note here that under § 195.010(25) and (17) morphine is a narcotic.

The defendant did not move, orally or in writing, for a judgment of acquittal; he was obviously represented at the trial by privately employed counsel, for no appointment of trial counsel is shown.

Defendant's present counsel has filed a motion here asking that we consider, as a part of our record, two affidavits attached to that motion. We decline to do so. The sole purport of these is that defendant's trial counsel claims that he, in a discussion with the Court and the Assistant Prosecutor at the beginning of the trial, *asked* the Court to suppress the evidence taken in the search and that the Court declined to do so because defendant had no possessory interest in the apartment. The Assistant Prose-cutor did not recall "any written or verbal motion to suppress." For the reasons hereinafter stated, the affidavits would not change our result, but we decline to expand the actual transcript by any reliance upon more or less vague affidavits which, in turn, depend upon the memory of past events rather than a real record. Hendershot v. Minich, Mo., 297 S.W.2d 403, 410, and sundry cases there cited.

We have held uniformly that the contention of an unlawful search and seizure should be raised by motion to suppress the evidence, in advance of trial. State v. Garrison, Mo., 305 S.W.2d 447, 451; State v. O'Brien, Mo., 252 S.W.2d 357, 359, certiorari denied 345 U.S. 929, 73 S.Ct. 790, 97 L.Ed. 1359; State v. Martin, 357 Mo. 368, 208 S.W.2d 203; State v. Lord, Mo., 286 S.W.2d 737; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878; State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938; State v. Lee, Mo., 233 S.W.2d 666. Thus, at the trial the Court only determines whether the confiscated evidence is competent and relevant, the constitutional objections having already been ruled. Hepperman, supra, 162 S.W.2d at loc. cit. 887, and other cases just cited; or, as said in State v. Dalton, Mo., 23 S.W.2d 1, the validity of the search and the admissibility of its fruits raises a collateral issue "which must be tried in a proceeding independent of the issue of guilt." The only stated exception lies "possibly" in those cases where the defendant "had no reason to anticipate the evidence would be introduced and was surprised", O'Brien, supra, 252 S.W.2d loc. cit. 359. There is no contention or indication that any such situation existed here, and the record fairly shows the contrary. Not only must defendant file a motion to suppress the controverted evidence, but he has the burden of presenting evidence to sustain his contentions. Criminal Rule 33.03(5), V.A.M.R.; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878, 887; State v. Jonas, Mo., 260 S.W.2d 3. In Hepperman, the Court said, at loc. cit. 887: "Not only is the legality of a seizure properly determined by a motion

to suppress the evidence but the burden is on the defendant to offer evidence and affirmatively demonstrate the illegality of the search and seizure. The motion does not prove itself. 20 Am.Jur., Sec. 396, pp. 357, 358; State v. Berry, Mo.Sup., 253 S.W. 712." Here, even if we considered the affidavits tendered, the fact remains that defendant offered *no evidence upon any motion to suppress.*

■ Moreover, the affirmative statements of "no objection" when all but two of the *now* controverted exhibits were offered, constituted a waiver of any and all contentions that they had been illegally obtained. We have discussed this point at the current term in the case of State v. Holbert, Mo., 416 S.W.2d 129, and so held, citing Hepperman, supra. We further hold now, as already indicated in Holbert, that the objection to the hypodermic needle and eyedropper on grounds wholly unrelated to the contention of an unlawful search, was also a waiver of that contention as to them. We have thus seen that at no time, as shown by our record, did the defendant even *ask* the Court to rule upon his present contentions until the amended motion for a new trial was filed; that was far too late. Under these circumstances we need not consider the alleged insufficiency of the knowledge or information upon which the officers relied in making the arrest, and whether, as defendant *now* contends, it furnished them with probable cause. All points made concerning the arrest and search and the admission in evidence of the "fruits of the search are denied. Our denial is not based upon the failure of defendant to raise these questions in a timely motion for a new trial. We have considered them here because constitutional issues are thus raised regarding the search. See State v. Beasley, Mo., 404 S.W.2d 689; State v. Rapp, Mo., 412 S.W.2d 120. What we have ruled is that there was no error, under Rule 27.20(c) or otherwise, because the defendant affirmatively waived at the trial all the contentions he now makes concerning an illegal search and seizure, and be-

cause these contentions were not presented and proven upon a motion to suppress the evidence. Neither a defendant nor his counsel may, as a matter of strategy, take one position at the trial and a contrary position after a jury has found the defendant guilty.

■ One further point has been briefed. When Jackie McDaris was testifying she was asked (by the State) how many times she had seen defendant "go through this operation?" Her answer then was: "Well, just once before, that's the first time he was arrested for it." Disregarding a misapprehension or the conflict between that answer and her other testimony regarding the *number* of times, the point was made that her voluntary statement concerning the arrest was improper and a mistrial was requested. This was denied, but the Court then instructed the jury to disregard the "voluntary statement." The motion for a mistrial was reviewed at the close of the evidence, it was considered at length and again denied. We cannot consider the point here, for there was no timely motion for a new trial. The verdict was returned on March 16, 1966, and the motion for new trial was filed on April 5, 1966, with an "amended" motion filed on April 14, 1966. See Criminal Rule 27.20. The transcript shows no extension of time under that rule for the filing of such motion; as a precaution we have inquired of the circuit clerk and he has found no such extension. The point is, therefore, denied. We note here, however, that in this ruling we do not in any sense infer that the trial court was in error.

■ We shall consider briefly the information, it being one of those matters which we consider under Rule 28.02 without assignment of error. Defendant was charged therein with the possession of a "needle" rather than a hypodermic needle, but this, along with the eyedropper, straight hairpin and cotton were specifically described as an "apparatus, device or instrument for the unauthorized use of narcotic

drugs * * *." Under the circumstances there could have been no misapprehension on the part of defendant or his counsel, for the true purport of the charge sufficiently appeared. We find no error in the other parts of the record which we examine under Rule 28.02.

The judgment is affirmed.

All of the Judges concur.