STATE of Missouri, Respondent,

v.

James Marvin FIELDS, Appellant.

No. 54003.

Supreme Court of Missouri,
Division No. 2.

June 9, 1969.

burglary, and was sentenced by the court pursuant to § 556.280, RSMo 1959, V.A.M. S., to be committed to the Department of Corrections for a period of seven years for the burglary and five years for the stealing, the sentences to run consecutively.

On the evening of November 16, 1967, an employee of the Peer Hardware Company located at 317 South Avenue, Springfield, Missouri, placed approximately $1,-700 in checks, coins, and currency in the safe and locked it. The store was then closed and the doors locked and secured. That evening, a little after ten o'clock, Detective Wheeler saw a Rambler station wagon in the darkest part of a parking lot located west of the rear entrance of the Peer Hardware store. He was familiar with the area and had never seen that automobile there before. He checked the license number and found that the automobile belonged to one "that [he] was familiar with." There were no business establishments in the neighborhood then open. About 11:40 o'clock Detective Wheeler saw three persons approaching the automobile from the east. He could not recognize them at that distance, but he saw that at least two of them were "carrying something." One of the persons got in the back seat of the station wagon, and the other two walked further back into the parking lot and out of sight. One of those two then returned and entered the station wagon and drove away. Officer Foster was with Detective Wheeler, and they followed the station wagon for several blocks and then stopped it. By reason of the spotlight on the police automobile, Detective Wheeler recognized appellant as the person in the back seat of the station wagon, and he saw him remove a red jacket he was wearing. A person by the name of Montgomery was driving. While standing near the station wagon, Officer Foster saw a lady's handbag with tools in it, "hammers and articles," on the floor of the station wagon between appellant's feet. Appellant and Montgomery were then placed under arrest by Detective Wheeler for "investigation of

John C. Danforth, Atty. Gen., Gene E. Voigts, Asst. Atty. Gen., Jefferson City, for respondent.

Louren G. Davidson, Springfield, for appellant.

STOCKARD, Commissioner.

James Marvin Fields was convicted by a jury of burglary in the second degree and with stealing during the commission of the

burglary and larceny" and also for "investigation of possession of burglary tools." The station wagon was then searched.

A report was made by radio to police headquarters, and a check was made of the Peer Hardware store where it was found that a hasp had been pried off of a door to the store and that the safe had been broken into and its door removed, and that money, several guns and some ammunition were missing.

In the Peer Hardware store there were three empty boxes which had, before the burglary contained pistols. On each box was the serial number of the pistol which had been in that box. When the station wagon was searched a .22 caliber pistol was found under the front seat, and a loaded .38 caliber pistol was found under the back seat. The serial number of each pistol corresponded with the serial number printed on an empty box designed to contain a pistol of that make and caliber which was found in the Peer Hardware after the burglary. In the pocket of the red jacket there were found two boxes of .38 caliber and one box of .45 caliber ammunition, and at least one of the boxes had a Peer Hardware "sticker" on it. Other items were also found in the automobile including a hunting cap with a Peer Hardware "tag" on it and some cotton gloves. Montgomery had $179, a majority of which was in one dollar bills, "twisted and wadded up" in his trouser pocket, and appellant had $22 in "normal condition" on his person.

Appellant's first point is that the "search and seizure was in violation of [his] rights under the provisions of the Fourth Amendment to the Constitution of the United States of America and Article 1, Section 15 of the Constitution of the State of Missouri," and for this reason he contends that the court erred in admitting in evidence the various exhibits hereafter described.

Exhibits I, J and J–1 were not obtained by the police as the result of a search or seizure. These exhibits were three empty boxes designed to hold pistols which were found in the Peer Hardware store after the burglary. When they were offered in evidence appellant's counsel expressly stated as to each that there was "no objection."

Exhibits M, N, and O were the three boxes of ammunition found in the pocket of the red jacket, and Exhibit P was the hunting cap found in the station wagon. When they were offered in evidence appellant's counsel expressly stated as to each that there was "no objection."

Exhibit K was the .22 caliber pistol found under the driver's seat of the station wagon. When it was offered in evidence the objection was that "there is no connection between this gun at this point and this defendant. The testimony was that the gun was found underneath the car [sic] owned or at least driven by Montgomery."

Exhibit L was the loaded .38 caliber pistol found under the back seat of the station wagon where appellant was seated. The objection was, "We renew our same objection."

Exhibit Q was a transistor radio found on the back seat of the station wagon, and it was tuned to "the Springfield Police Department frequency." When offered in evidence, the objection was: "We object to this for the same reason that we objected to the pistol a minute ago. I would like to make that same objection on the basis that there is nothing in this radio that ties particularly to this defendant, that it was Mr. Montgomery's car."

Exhibit R was the cotton gloves, and the objection was: "I would like to renew the same objection that was previously made concerning these being found in that car not belonging to this defendant."

Exhibit S and S–1 through S–7 were a lady's handbag, a two pound hammer, an eight pound hammer, a pinch bar and four chisels. The objection to each was "we will renew our same objection."

Appellant and Montgomery were charged jointly, and their preliminary hearing was held at the same time. The record discloses that at the preliminary hearing Montgomery moved to suppress the various items of evidence which were taken by the police from the station wagon. No motion to suppress on behalf of appellant was filed at the preliminary hearing or in the trial court. As demonstrated above, at the time the various exhibits were offered in evidence no objection was made on the ground that any of them had been unlawfully seized by the police.

■ It has long been the rule in this state that evidence obtained by means of an unlawful search and seizure by police officers is not admissible against the person searched, or whose property is searched, where timely objection to the use of such evidence is made. State v. Cuezze, Mo., 249 S.W.2d 373; State v. Holt, Mo., 415 S.W.2d 761. The procedural rules of this state, with an exception not here material, require that the contention of an unlawful search and seizure be made by motion to suppress the evidence in advance of trial. State v. O'Brien, Mo., 252 S.W.2d 357, certiorari denied, 345 U.S. 929, 73 S. Ct. 790, 97 L.Ed. 1359; State v. Lord, Mo., 286 S.W.2d 737; State v. Holt, supra. The validity of a search and the admissibility in evidence of the fruits of that search present issues collateral to the issue of guilt which are to be tried independently, State v. Dalton, Mo., 23 S.W.2d 1, and "Not only must defendant file a motion to suppress the controverted evidence, but he has the burden of presenting evidence to sustain his contentions." State v. Holt, supra, 415 S.W.2d at p. 764; Supreme Court Rule 33.03(a) (5), V.A.M.R.; State v. Jonas, Mo., 260 S.W.2d 3. He must also keep the question alive by timely objection, State v. Tunnell, 302 Mo. 433, 259 S.W. 128; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878, and by preservation of the issue in a motion for new trial. State v. Lord, supra. The only exception under our procedural rule is where the defendant "had no reason to anticipate the evidence would be introduced and was surprised." State v. O'Brien, supra, 252 S.W.2d at p. 359. As previously noted, appellant filed no motion to suppress the evidence, although such a motion was filed by Montgomery in the Magistrate Court at the time of their joint preliminary hearing. In addition, three of the exhibits were not obtained by the police as the result of a search or seizure, and these three exhibits and four others were admitted into evidence only after appellant expressly stated he had no objection. The other exhibits were admitted into evidence over the objection of appellant that "no connection" between the exhibit and appellant had been shown, which was without merit, but there was no objection to the exhibits on the ground that they had been illegally seized as the result of an unreasonable search. In addition, there is no mention whatever in appellant's motion for new trial that evidence seized as the result of an unlawful search was used against him.

■ When no motion to suppress was filed in advance of trial, the prosecuting attorney properly could assume that defendant had no objection to the admission in evidence of the items on the basis that the police had no authority to search the automobile. He could further assume that to qualify the various items for admission in evidence it would not be necessary to prove a lawful search and seizure because, if defendant contended an unlawful search and seizure occurred, "he [had] the burden of presenting evidence [at the hearing on a motion to suppress in advance of trial] to sustain his contentions." State v. Holt, supra, 415 S.W.2d at p. 764. Whether appellant failed to file a motion to suppress because he believed there was no merit to such a motion, or because he deliberately bypassed the procedural requirement of filing such a motion for strategic reasons or to invite error, he is not now entitled to contend that the items taken from the automobile at the time of his arrest were obtained as the result of an unlawful

search. State v. Harrington, Mo., 435 S. W.2d 318.

Appellant refers to Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L. Ed.2d 227, decided March 24, 1969, and asserts that by reason of that case the contention of an unlawful search and seizure can be raised at any time without regard to state procedural requirements.

In the Kaufman case the defendant was convicted in federal court of the crime of armed robbery. His defense at trial was insanity, and the conviction was affirmed on appeal. The defendant then filed a post-conviction proceeding under 28 U.S.C. § 2255, and included a claim that the finding of sanity was based upon the improper admission of unlawfully seized evidence, an issue not assigned as error in appellant's appeal. The United States Supreme Court held that in those circumstances "a claim of unconstitutional search and seizure is cognizable in a § 2255 proceeding." The Kaufman case expresses the scope of a post-conviction review in the federal courts pursuant to § 2255, but we consider the rule set forth in Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, to be controlling in this case. In the Henry case it was held that "a litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest," and that a state procedural requirement that there be a "contemporaneous objection" to the introduction of illegally obtained evidence does serve a legitimate state interest. In State v. Harrington, supra, we considered the purpose and reason for the procedural rule in this state that objections to the introduction of evidence claimed to have been obtained by an unlawful search and seizure be presented by a motion to suppress, with the one exception there noted, and concluded that "The rule unquestionably serves a legitimate state interest." We adhere to that view.

Appellant's next point is that the court erred in admitting in evidence the various items "found in co-defendant's car, with no showing that appellant had any interest or right to possession of car." Cited by name is State v. Cuezze, Mo., 249 S.W. 2d 373, but the citation reference is to State v. Young, Mo., 425 S.W.2d 177. These cases deal with the legality of a search and seizure. We have some difficulty understanding appellant's precise contention. If it is appellant's position that the station wagon neither belonged to him nor was in his possession, he would have no standing to raise the issue of an alleged illegal search and seizure, State v. Taylor, Mo., 429 S.W.2d 254, and this may have been the reason that no motion to suppress was filed. On the other hand, if it is appellant's position that there was an insufficient showing of relevancy of the items taken from the station wagon and admitted in evidence, we must disagree. The recitation of the facts clearly establishes relevancy. The officers saw three persons, one of whom was appellant, approach the station wagon from the direction of the Peer Hardware store where a burglary had occurred. Two of them, one of which was appellant, drove away, and when stopped by the police, in the possession of Montgomery and appellant there were found items of property which had been stolen from the Peer Hardware, some of which were in the pocket of a jacket which appellant had removed immediately before his arrest, and some of which were on or under the back seat where appellant was sitting. Under these circumstances there was no reason or need for the state to show that "appellant had any interest or right to possession of [the] car." The items were relevant without such showing.

Appellant next asserts that the trial court erred in failing to disqualify for cause a member of the jury panel who had read about appellant being arrested for "other things."

The transcript shows that when the court asked if any member of the jury

panel knew of any reason why he could not fairly try the case, Juror Gage asked to speak to the court "in private." In the presence of counsel for appellant and for the state the juror then stated that he "seemed to recall" reading that appellant had been arrested for "other things." He further stated that he had formed no opinion as to appellant's guilt, he did not "think it would affect" him, that he would try not to let it affect him and he would be as fair as he could, and that his decision would be based solely on the evidence. After the above answers by Juror Gage at the bench, the court directed him to take his seat. Subsequently, appellant's counsel asked him several questions, but made no request to the court that he be disqualified as a juror.

The trial court has considerable discretion in ruling on challenges of jurors who are not disqualified as a matter of law. State v. Taylor, Mo., 324 S.W.2d 643, 76 A.L.R.2d 671; State v. Spica, Mo., 389 S.W.2d 35, 41, certiorari denied 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312. If a request had been made that Juror Gage be disqualified, the trial court would not have abused its discretion in overruling it. However, in the absence of such request or a challenge of Juror Gage there is nothing before us for review.

Appellant's last two points are that the evidence was insufficient as a matter of law to support a verdict of guilty and the court erred in overruling his motion for a judgment of acquittal. Appellant does not set forth what element of burglary or of stealing in connection with the burglary he contends is missing. Appellant unquestionably had at least a joint possession of the items which had been stolen from the Peer Hardware store, State v. Webb, Mo., 382 S.W.2d 601, and appellant was shown to have approached the station wagon, where the stolen property was found, in company with Montgomery and another from the direction of the Peer Hardware store at a time when the burglary could have been committed. This satisfies the requirement of State v. Watson, Mo., 350 S.W.2d 763, that when the possession of recently stolen property by appellant is shown to be joint with another there must be "something else in the evidence to connect defendant with the offense." "It has long been the rule that an inference of guilt is permissible from the possession of property recently stolen in a burglary, and the inference exists both as to the burglary and the stealing." State v. Durham, Mo., 367 S.W.2d 619, certiorari denied, 375 U.S. 861, 84 S.Ct. 130, 11 L. Ed.2d 89.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.