STATE of Missouri, Respondent,

v.

James Robert CAFFEY, Appellant.

Nos. 49364, 55151.

Supreme Court of Missouri,
Division No. 1.

Sept. 14, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

O. J. Taylor, Springfield, for appellant.

HOUSER, Commissioner.

James Robert Caffey, convicted of unlawful control of narcotic drugs and sentenced to 20 years' imprisonment, appealed. His conviction was affirmed on February 11, 1963. State v. Caffey, Mo.Sup., 365 S.W.2d 607. On January 12, 1970 this Court set aside its earlier judgment on the ground that Caffey was not represented by counsel on the original appeal, in accordance with the decisions in Bosler v. Swenson, 8 Cir., 363 F.2d 154, and Swenson v.

Donnell, 8 Cir., 382 F.2d 248. In the meantime Caffey had filed a motion to vacate the sentence and judgment under Criminal Rule 27.26, V.A.M.R.; his motion had been overruled, and he had appealed. The original appeal, reinstated, and the appeal of the 27.26 order were consolidated, briefed and argued together and will now be disposed of in one opinion.

The prosecution was founded upon the seizure of a bottle of cocaine hydrochloride, discovered in a search of a safe-deposit box held in the name of Caffey in a Springfield bank. The search was conducted under a magistrate's warrant which issued following the filing of an affidavit signed by the assistant prosecuting attorney, who moved the court to issue its search warrant for the reason that the attached affidavit of Doyle Mace "states evidential facts which show the existence of probable cause to believe that James R. Caffey has under his control in a lock box at the Union National Bank, Springfield, Missouri, a quantity of narcotics (described). There is at the Union National Bank a lock box No. 7005 which is under the control of James R. Caffey." Mace's attached affidavit was as follows:

"I, Doyle Mace, on this 28th day of November, 1961, being duly sworn state that the following facts are true: During August, 1961, James R. Caffey told me that he had a bottle of a narcotic commonly known as 'coke' in his lock box at the Union National Bank. He also said that the 'coke' was extremely valuable on the illicit market."

■ We will not determine the validity of the search on the appeal in the 27.26 proceeding for the reason that a claim of illegal search and seizure is not such a matter as may be raised in a collateral attack upon a judgment of conviction. State v. Holland, Mo.Sup., 412 S.W.2d 184; State v. Webb, Mo.Sup., 400 S.W.2d 84 [3, 4]; State v. Engberg, Mo.Sup., 391 S.W.2d 868; State v. Worley, Mo.Sup., 383 S.W.2d 529, 533; State v. Kackley, Mo. Sup., 391 S.W.2d 350; State v. Durham, Mo.Sup., 386 S.W.2d 360, cert. den. 382 U.S. 857, 86 S.Ct. 110, 15 L.Ed.2d 94, and State v. Howe, Mo.Sup., 364 S.W.2d 546, cert. den. 373 U.S. 943, 83 S.Ct. 1552, 10 L.Ed.2d 698. Nor will we make the determination on the direct appeal for the reasons given in State v. Fields, Mo.Sup., 442 S.W.2d 30, 33: "The procedural rules of this state, with an exception not here material, require that the contention of an unlawful search and seizure be made by motion to suppress the evidence in advance of trial. State v. O'Brien, Mo., 252 S.W.2d 357, certiorari denied, 345 U.S. 929, 73 S.Ct. 790, 97 L.Ed. 1359; State v. Lord, Mo., 286 S.W.2d 737; State v. Holt, [Mo., 415 S.W.2d 761] supra. The validity of a search and the admissibility in evidence of the fruits of that search present issues collateral to the issue of guilt which are to be tried independently, State v. Dalton, Mo., 23 S.W.2d 1, and 'Not only must defendant file a motion to suppress the controverted evidence, but he has the burden of presenting evidence to sustain his contentions.' State v. Holt, supra, 415 S.W.2d at p. 764; Supreme Court Rule 33.03(a) (5), V.A. M.R.; State v. Jonas, Mo., 260 S.W.2d 3. He must also keep the question alive by timely objection, State v. Tunnell, 302 Mo. 433, 259 S.W. 128; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878, and by preservation of the issue in a motion for new trial. State v. Lord, supra. The only exception under our procedural rule is where the defendant 'had no reason to anticipate the evidence would be introduced and was surprised.' State v. O'Brien, supra, 252 S.W.2d at p. 359."

Caffey filed no motion to suppress the evidence, made no objection to the admission of the narcotic in evidence, and failed to assign error with respect thereto in his motion for new trial. In these circumstances he cannot now claim that the search and seizure was unlawful. State v. Fields, supra; State v. Harrington, Mo. Sup., 435 S.W.2d 318.

Caffey claims that we should consider this point under the reasoning of the Supreme Court of the United States in Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227, but as conceded in his brief this Court has ruled that the scope of postconviction review in Missouri is governed by the rule of Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed. 2d 408, and not by the rule of Kaufman. State v. Fields, supra, 442 S.W.2d, l. c. 34.

Caffey asserts, however, that there was plain error affecting substantial rights resulting in manifest injustice or a miscarriage of justice, and that we should consider the matter under the plain error rule. Criminal Rule 27.20(c). The plain error rule may not be invoked in this case. There must be a "sound, substantial manifestation * * * a strong, clear showing, that injustice or miscarriage of justice will result if the rule is not invoked." State v. Meiers, Mo.Sup., 412 S.W.2d 478, 480; State v. Carpenter, Mo.Sup., 436 S.W.2d 748, 751. There is no such showing in this case. On the contrary, no injustice and no miscarriage of justice will result from the affirmance of this judgment of conviction. Caffey's guilt is established by overwhelming evidence. In August, 1961 Caffey admitted to an associate that he had placed some "coke" (a narcotic drug) in his lockbox in a certain bank. Caffey had previously rented a lockbox at that bank. On November 28, 1961, when the affidavit for the search warrant was executed, the lockbox was still in Caffey's name, and the bank records on that date showed that no one had entered the box since the preceding December. This is strong if not positive proof of guilt of the crime of having in his control the proscribed drug at the time the search warrant issued. A judgment setting aside a conviction under this evidence (which was uncontroverted) on the ground of manifest injustice or miscarriage of justice would be a mockery of justice.

Caffey argues that he should not be held to have waived his right to question the validity of the search and seizure because there was no meaningful waiver of his constitutional rights; that he had no knowledge of the grounds for moving to suppress the evidence and therefore could not and did not intentionally relinquish or abandon his rights; that his attorney erred in not raising the point and that Caffey did not make the "considered choice" referred to in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. This claim leads directly into and is related to Caffey's third point, that he was deprived of his constitutional right to the effective assistance of counsel at his trial because his appointed counsel failed to file a motion to suppress State's Exhibit D (the drug seized); failed to object to its introduction in evidence, and failed to raise the question in the motion for new trial.

At the 27.26 hearing Caffey testified that while he knew there was a procedure for suppressing evidence by pretrial motion he did not know of any legal ground therefor; that he was not aware of a line of cases holding that the time of the occurrence of the facts relied upon in the affidavit to establish probable cause must not be too remote from the time the search warrant issues; that he relied upon his attorney to determine whether there were sufficient grounds in his case; that he asked his attorney to look into the question whether a motion to suppress might be filed; that his attorney told him he would look into the situation; that several days later the attorney stated that as far as he could determine there was no ground to justify the filing of a motion to suppress and it would be frivolous to do so; that "all the court papers were in order"; that he had looked at the affidavit and everything was proper; everything was in order, and "it would be ridiculous to try to suppress it."

Caffey's trial counsel (who no longer represents Caffey) testified at the 27.26 hearing that he conferred with Caffey at least six or seven times; that the legality of the search and seizure was never men-

tioned; that Caffey did not request him to check on the validity of the search warrant and the possibility of moving to suppress the evidence, and that he did not discuss the matter with Caffey. In answer to the question whether he explored the validity of the seizure he testified that he obtained a copy of the search warrant, examined the affidavit made by Mace, contacted the custodian of the safe-deposit vault at the bank and there examined the ledger card showing dates of entry to the vault; that the affidavit and warrant being in proper form and from the information disclosed on the entry card he made no suggestion that a motion to suppress be filed. On cross-examination the lawyer frankly admitted that he did not think of or contemplate a motion to suppress at that time; that he looked at the papers to see if the affidavit was in proper form, and whether it disclosed probable cause for issuance of a search warrant and if those facts were substantiated by the records at the bank, but that the line of cases cited in an annotation on the subject in 100 A.L.R.2d did not enter into his thinking at the time, and that the motion to suppress "in 1961 was not quite the lady of the courtroom that it is today."

Caffey has failed to sustain the burden of demonstrating that assigned trial counsel's conduct deprived him of his constitutional right to effective counsel. The record in this case does not show that the search was so patently illegal that a motion to suppress would necessarily have been sustained if filed. While counsel's judgment on the question whether probable cause was sufficiently demonstrated and his conduct in proceeding to trial without challenging the admissibility of Exhibit D may be open to question (judged in retrospect under the sensitive standards of 1970 and armed now with the cases cited in the annotation in 100 A.L.R.2d, found by diligent counsel appointed to conduct this ap-

peal) it has not been demonstrated that assigned trial counsel reached his conclusion arbitrarily, without reasonable investigation and consideration, or that in failing to consider and file a motion to suppress, etc. he necessarily deprived Caffey of a right to have the case dismissed. "The defendant's trial counsel may have had knowledge of facts surrounding the arrest and search that do not appear in the record and which would have made a pretrial motion to suppress futile. The failure of retained counsel [1] to move to suppress illegally seized evidence does not of itself constitute incompetency so as to warrant reversal. [Citing cases.]" People v. Horton, 117 Ill.App.2d 465, 254 N.E.2d 666, 668 [4]. From this record it appears that assigned trial counsel investigated the facts relating to the question of probable cause, examined the lockbox records at the bank (from which it was evident that there was every reason to believe that cocaine in the box August 1 was still there), read and considered the affidavit and warrant, and made a considered judgment, based upon both the affidavit and the extraneous facts that the magistrate had probable cause to believe that Caffey had cocaine under his control in that box. In his judgment the search and seizure was justified. Entertaining that view, the filing of a motion to suppress apparently did not occur to him. His trial strategy was to meet the State's evidence as best he could without challenging its admissibility. His judgment may have been faulty, but " * * mere errors of judgment or a mistaken choice of strategy by an attorney is not sufficient to support a finding of lack of effective assistance of counsel in the constitutional sense. Wright, 2 Federal Practice and Procedure, § 595, at 611 (1969); Ellis v. United States, 353 F.2d 402, 405 (8th Cir. 1965); Lewis v. United States, 111 U.S.App.D.C. 13, 294 F.2d 209, 211 (1961), cert, denied 368 U.S. 949, 82 S.Ct. 390, 7 L.Ed.2d 344 (1961); Mitchell v. United

1. The standard of adequacy of representation by retained counsel is applicable in cases involving court-appointed counsel.

State v. Woolbright, Mo.Sup., 449 S.W.2d 602, 605 [5].

States, 104 U.S.App.D.C. 57, 111 U.S.App. D.C. 13, 259 F.2d 787 (1958), cert. denied 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958)." United States v. Meyer, 8 Cir., 417 F.2d 1020, 1023 [3] (1969), a case involving failure to move for suppression of evidence in which Gibson, J. remarked, "The failure to move for suppression of the evidence is a common trial tactic." 417 F.2d, supra, l. c. 1024. Aided by hindsight it is easy to say that ideal representation would have included the research necessary to discover the line of cases later found by other counsel and the filing of a motion to suppress and presenting it in an effort to destroy the State's case, which depended entirely upon the admission in evidence of Exhibit D. This would have been perfect representation, but the Constitution does not guarantee to a defendant the assistance of perfect or errorless counsel or the best counsel available. Odom v. United States, 5 Cir., 377 F.2d 853, 22 A. L.R.3rd 705 (1967); United States v. Stahl, 7 Cir., 393 F.2d 101 (1968), cert. den. 393 U.S. 879, 89 S.Ct. 181, 21 L.Ed.2d 152; United States v. Currier, 2 Cir., 405 F.2d 1039 (1969), cert. den. 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228; Benson v. State Board of Parole & Probation, 9 Cir., 384 F.2d 238 (1967), cert. den. 391 U.S. 954, 88 S.Ct. 1860, 20 L.Ed.2d 869; Brooks v. State of Texas, 5 Cir., 381 F.2d 619 (1967). A defendant is entitled to reasonably effective assistance in the preparation and trial of his case but that does not mean that counsel's every mistake in judgment, error in trial strategy or misconception of the law will deprive the accused of a constitutional right. Benson v. State Board of Parole and Probation, supra. Relief may be had on the ground of inadequacy of counsel when the representation has been so woefully inadequate as to shock the conscience of the court and make the proceedings a farce and mockery of justice. Holbert v. State, Mo.Sup., 439 S.W.2d 507 [3]; State v. Worley, Mo.Sup., 371 S.W.2d 221, 224 [8]; Kress v. United States, 8 Cir., 411 F.2d 16, 22 (1969); United States v. Currier, supra; United

States ex rel. Carey v. Rundle, 3 Cir., 409 F.2d 1210 (1969); Hayes v. Russell, 5 Cir., 405 F.2d 859 (1969); Campbell v. United States, 5 Cir., 401 F.2d 894 (1968); Cardarella v. United States, 8 Cir., 375 F.2d 222 (1967), cert. den. 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176; United States ex rel. Maselli v. Reincke, 2 Cir., 383 F.2d 129 (1967). This rule has been equated with incompetence of counsel which in effect has "blotted out the essence of a substantial defense * * *." Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113, 116-117 (1967). No such incompetence has been demonstrated. On the contrary, assigned counsel's representation considered as a whole was competent and valuable. He conferred numerous times with Caffey prior to trial. A review of the transcript of the original trial demonstrates competency in the protection of Caffey's interests in securing permission of the court to privately interview the State's witnesses before they took the stand, in the objections made to questions put to State's witnesses by the prosecuting attorney, and the questions asked on cross-examination of the State's witnesses, in securing permission of the court to comment on the failure of the State to call State's witness Doyle Mace, in filing a motion for acquittal, objecting to instructions given for the State, offering an instruction defining the word "control," making a final argument, filing a motion for new trial and an application to appeal as a poor person, and filing a notice of appeal.

■ Brizendine v. Swenson, W.D.Mo., 302 F.Supp. 1011 (1969); Schaber v. Maxwell, 6 Cir., 348 F.2d 664 (1965); Poe v. United States, D.D.C., 233 F.Supp. 173 (1964), and People v. Ibarra, 60 Cal.2d 460, 34 Cal.Rptr. 863, 386 P.2d 487 (1963), are cited in support of Caffey's contention. The derelictions of counsel in those cases were held by those courts to have deprived the accused of a fair trial—to have denied due process of law. In Caffey's case there was no such deprivation or denial for the reasons stated. The

point of law of which court-appointed counsel was uninformed was an unusual point, so rare that it had not reached the appellate courts of this State in almost 150 years of litigation. Reasonable representation and consideration of the case is required but universal knowledge of the law is not exacted.

■ Next, Caffey claims that he was denied effective assistance because counsel was not appointed for him at his preliminary hearing in the magistrate court. He claims he was advised by the assistant prosecuting attorney and the magistrate judge that an attorney could be appointed only in the circuit court, and therefore he waived his right at the preliminary so that he could get to circuit court and get a competent defense attorney, "as I had no money." Caffey asks for reconsideration of our uniform holding that a magistrate is not required to appoint counsel for an accused at a preliminary hearing. While this appeal was under consideration the United States Supreme Court decided the case of Coleman v. State of Alabama, 399 U.S. 1, 90 S. Ct. 1999, 26 L.Ed.2d 387, 1969, in which it was held that the Alabama preliminary hearing is a critical stage of the state's criminal process, at which the accused is entitled to the assistance of counsel. Because of the difference between the functions and procedures in preliminary hearings in Alabama and Missouri[1] it is unclear whether the rule of Coleman is to be applied in this State. We are reserving that question, deciding now only that if applicable here it will not be applied retroactively for the reason that such a holding would immeasurably increase the burden on the courts, prosecuting officials and law enforcement agencies and so add to the number of applications for relief filed by prisoners as to adversely affect the administration of justice. This case having been tried long before June 22, 1970 (the

date on which Coleman v. State of Alabama, supra, was decided), and this petitioner, Caffey, having failed to meet the burden resting upon him to demonstrate error and prejudice on this ground, that is, that anything that happened at the preliminary hearing was critical to the fairness of his trial, or that he was affirmatively prejudiced at the trial by anything that happened at the preliminary hearing, or that he was deprived of some affirmative advantage at the trial by absence of counsel at the preliminary hearing, State v. Ussery, Mo.Sup., 452 S.W.2d 146 [4], we hold that there was no error in denying Caffey counsel at the preliminary hearing before the magistrate.

Finally, it is urged that the court erred in overruling Caffey's motion for acquittal. The State's case consisted of State's Exhibit D, a one-ounce container of cocaine hydrochloride in its original container with the government stamp-seal unbroken, found in the lockbox rented by Caffey, and Caffey's admissions, made to Doyle Mace, the sheriff and a detective, that the cocaine had been placed in the box by Caffey for "a long time"—"about a year"—that he placed it there and that it was his property. Caffey calls attention to the sheriff's testimony that Caffey told him that he had received Exhibit D from a doctor in Jeffersonville, Illinois and the detective's testimony that he had obtained this from a doctor friend of his in Jacksonville, Illinois and that the doctor was a licensed doctor in Illinois. There was no evidence to contradict the statements that the drug had been obtained from a doctor who was a licensed physician.

■ Caffey claims that he is entitled to an exemption from criminal liability because he comes under the exception of § 195.110, V.A.M.S., which provides that a person to whom any narcotic drug has been dispensed by a physician may lawful-

1. In Alabama, as we noted in State v. Ussery, Mo.Sup., 452 S.W.2d 146, 147, available defenses must be pleaded at the preliminary hearing or the opportunity to assert them at trial is lost.

ly possess it in the container in which it was delivered to him by the person dispensing it. "Dispense" is defined in § 195.010(9) as including "[to] distribute, leave with, give away, dispose of, or deliver." He argues that the State's own evidence meets the requirements of the exemption statute, and proves his innocence of criminal charges; that the State is bound by the officers relating the statements of Caffey that the drug was obtained from a licensed physician, because the testimony was adduced by the State in its case in chief on direct examination of its own witnesses and there was no evidence to the contrary. Caffey claims that while § 195.180 provides that it shall not be necessary for the State to negative any exception contained in Chapter 195, where the State's case does negative one of the statutory exceptions, and the State does not contradict that evidence, it has failed to meet its burden of proof and its case fails.

We disagree. The State is not bound by, or compelled to accept as true, self-serving statements contained in an accused's admission even though introduced in the State's case. State v. Brookshire, Mo.Sup., 368 S.W.2d 373 [18]; State v. Caldwell, Mo.Sup., 434 S.W.2d 571 [5]; State v. Sallee, Mo.Sup., 436 S.W.2d 246, 254 [16]. The State may challenge as false portions of the defendant's statements introduced in evidence by the State. State v. Ruffin, Mo.Sup., 286 S.W.2d 743 [19]. The jury could believe or disbelieve the whole or any part of Caffey's statements to the officers. State v. Grant, Mo. Sup., 372 S.W.2d 9 [4]. The jurors could believe his statement that he had placed the drug in the lockbox about a year before and that it was his property, and disbelieve that part of the statement about having obtained it from a doctor in Illinois. State v. Caldwell, supra, 434 S.W. 2d, l. c. 575 [5]. Caffey concedes that many cases hold that the State is not bound by exculpatory statements contained in a defendant's confession or admission but

argues that in each of these cases, such as in Grant, supra, there was additional evidence rebutting the self-serving parts of the statement, and that there is no such contradictory evidence in Caffey's case. This overlooks the evidence that the drug had been in the lockbox for a long time, "about a year." This is circumstantial evidence contradicting the evidence that the drug was dispensed by a physician. Under § 195.070 the only authority a physician has to dispense narcotic drugs is "in good faith and in the course of his professional practice." Caffey could claim exemption on the basis that the drug had been dispensed to him by a licensed physician in the course of his professional practice only if the drug had been prescribed by the physician for use by Caffey as a patient. The fact that the drug had been in the lockbox, the container unopened and the drug unused for a long time—about a year, would circumstantially negative any inference that the drug had been prescribed for Caffey's personal use.

Caffey also complains of the prosecutor's comment in his opening statement that the testimony would show that Caffey on numerous occasions bragged to one of his associates "that he had some 'coke'—which is the common name for a narcotic among the underworld—he bragged to his associates that he had 'coke' in a lock box in a bank here in this city, and also that it was worth a great deal of money on the watered-down market," coupled with the failure of the State to prove these facts; that while the proof was that Caffey said he had some "hard stuff" in a safe-deposit box no attempt whatever was made to prove that Caffey bragged of its value on the watered-down market. It is urged that this labeled Caffey as a member of the underworld; that there is no proof that Caffey ever used the word "coke" in referring to the drug; that it effectively charged that Caffey intended to profit from the drug because it was valuable on the illicit market, when there is no proof that Caffey had any

plans to do anything illicit with this drug; that on the question of good faith the record shows that the prosecution, having done the damage by making the statement, was satisfied to abandon the matter and made no effort to prove the allegation. At the time he made this statement the prosecuting attorney had in his possession the affidavit of Doyle Mace, which stated that Caffey told Mace that "the 'coke' was extremely valuable on the illicit market." Mace's name was endorsed on the information as a witness for the State. For some undisclosed reason Mace was not called as a witness. Caffey's attorney took advantage of this by securing permission of the court to comment upon the fact. There is nothing to show that the prosecuting official made the statement without any intention of calling Mace to prove it. We must presume that at the time he made his opening statement the prosecuting attorney in good faith intended to use the witness Mace to prove what he had said in his affidavit. While it was improper to refer to the drug as it is known in the "underworld" without going on to prove this statement, because of the danger of the jury equating the accused with the underworld, this impropriety is insufficient in itself to upset this conviction.

No reversible error appearing in either of the two appeals before us, the judgments appealed from are affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HOLMAN and BARDGETT, JJ., concur.

SEILER, P. J., dissents in separate opinion filed.

SEILER, Presiding Judge (dissenting).

I respectfully dissent. In my opinion, Caffey has sustained the burden of demonstrating that the conduct of his assigned trial counsel deprived him of his constitutional right to effective assistance of counsel. I have reference to the failure to challenge the validity of the search warrant. Suppression of the seized bottle of cocaine was the only effective defense Caffey had. Under our adversary system, it was the duty of defense counsel to defend his client, whether innocent or guilty, and if he could cripple or destroy the state's case by suppressing the seized evidence, then as a part of defendant's constitutional guarantee of effective assistance of counsel, defendant was entitled to representation which did not overlook this opportunity.

As I understand the facts here, all the magistrate had before him was the affidavit of the informer, attached to the affidavit of the prosecuting attorney, to the effect that sometime earlier, perhaps as much as 120 days earlier, Caffey had told the informer he (Caffey) had a bottle of cocaine in his safe deposit box. It was on this showing alone that the magistrate had to determine whether there was probable cause within the meaning of the state and federal constitutions.

The proposed opinion does not reach this point, but if reached, it would be most doubtful if the search warrant were valid. The state conceded in oral argument it had been unable to find any case upholding probable cause where there was such a great lapse of time between the alleged offense and the date of the affidavit. The authorities and reasoning on the point are all to the contrary. See the annotation in 162 ALR 1406, published in 1946 and the superseding annotation in 100 ALR2d 525, published in 1965.

As I understand it, the magistrate did not have before him the information that the bank records showed no one had entered the box since the preceding Decem-

ber. No such evidence was adduced at the time the warrant was issued. The validity of the search warrant cannot be determined on information subsequently discovered which would have supported it, but which was unknown to and hence not considered by the magistrate in determining whether probable cause had been shown him for the issuance of the warrant. It was good or bad when issued, In re Search Warrant of Property at Apartment No. 7 (Mo.Sup.) 369 S.W.2d 155, 158, but counsel overlooked this.

This ground of challenge to the validity of the search warrant is nothing new. It is part of probable cause, which is basic to any search warrant. The proposed opinion, respectfully submitted, overstates when it implies "universal knowledge of the law" would be required, or the legal acumen of a Wigmore, Cardozo, or Emory Buckner, to think of it. The legal proposition involved is contained in any standard reference on searches and seizures and it was not necessary to wait for the annotation in 100 ALR2d 525 to learn about it.

In Brizendine v. Swenson (W.D.Mo.) 302 F.Supp. 1011, the court held that where defense counsel was not aware of Chapter 552 dealing with criminal proceedings involving mental illness or of defendant's right to an independent psychiatric examination at state expense, the defendant had been deprived of his constitutional right to effective assistance of counsel. I see no difference in principle here, where defense counsel candidly stated he simply did not think of filing a motion to suppress. Either way, the effect on the defendant is the same: through ineffective assistance of counsel, he loses the defense, or to use the apt language quoted in the majority opinion from Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113, 117, there has been "blotted out the essence of a substantial defense".

We should vacate this judgment and sentence and send this case back for a new trial.