STATE of Missouri, Plaintiff–
Respondent,

v.

William E. HENDERSON, Jr.,
Defendant–Appellant.

No. 21106.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 30, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 22, 1997.

Application to Transfer Denied
Nov. 25, 1997.

Thomas Patrick Deaton, Springfield, for Defendant–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Blegen, Asst. Atty. Gen., for Plaintiff–Respondent.

PARRISH, Presiding Judge.

William E. Henderson, Jr., (defendant) was convicted following a jury trial of the class C felony of possession of methamphetamine, a controlled substance. § 195.202, RSMo 1994. This court affirms.

Defendant was driving a 1995 Chevrolet Camaro automobile in Polk County, Missouri, on July 27, 1995, when he was stopped by Deputy Sheriff Randall Kennedy. Cindy Melonson was a passenger in defendant's automobile.

Deputy Kennedy had received a dispatch earlier that day from the Hickory County sheriff's department concerning a Camaro automobile. The dispatch included the li-

cense number that was on defendant's vehicle. It reported the car had been involved in the theft of sheets and towels from a motel.

Deputy Kennedy stopped the car just outside the Bolivar, Missouri, city limits. He told defendant that he would like to talk to him about an incident that had occurred at a motel in Hickory County. He asked defendant to follow him to the Polk County sheriff's office. Defendant agreed.

Deputy Kennedy drove to the sheriff's office. Defendant followed him. Defendant was told that his car and license plate matched the description of the vehicle reported to have been involved in the theft of items from a Hickory County motel. Deputy Kennedy asked permission to search the car. Defendant consented and handed his car keys to another deputy sheriff who was present, Eric Cartwright.

The two deputy sheriffs went outside to search the car. Defendant and Ms. Melonson accompanied them. The deputies unlocked the car. Deputy Kennedy searched the driver's side. Deputy Cartwright searched the passenger side. Deputy Kennedy found a hand towel by the driver's seat and some sheets in the back seat of the car.

Deputy Cartwright looked in the glove box, under the visor and in the console between the front seats. He looked under the passenger seat where he saw a plastic bag. He pulled the plastic bag from beneath the seat, opened it and found packages of white powder, packages containing a green leafy substance and drug paraphernalia. Defendant and Ms. Melonson were placed under arrest for possession of a controlled substance.

The plastic bag taken from beneath the front passenger seat in defendant's car was given to Deputy Sheriff Kevin Spaulding, Polk County's narcotics investigator. Deputy Spaulding checked its contents. The bag contained a cigarette package with three small plastic bags full of white powder, cigarette papers, a straw, a razor blade, three small zip-lock bags and four clean syringes. There were also four sandwich bags in the larger plastic bag. The sandwich bags contained a green leafy substance that appeared to be marijuana.

The white powder that was taken from defendant's car was later determined to be 6.25 grams of methamphetamine. The green leafy substance in the four plastic bags was found to be marijuana.

Defendant initially denied that the drugs were his. He postulated that his ex-wife put them in his car "to set him up." The next day defendant told Deputy Spaulding that the marijuana and methamphetamine were his; that they were for his personal use. He gave Deputy Spaulding a written statement admitting the items were his. Defendant described, in detail, the way the items were packaged. Deputy Spaulding explained, "He told me that these two quarter gram bags of crank, as he described them, were in small zip-lock bags with peace signs on them. He described the marijuana being in four—half an ounce of marijuana in four separate packages, four separate plastic bags all of them an eighth-ounce packages."

Defendant presents five points on appeal. The first two seek plain error review in that they claim defendant was entitled to relief not requested during the course of the trial. Points I and II assert the trial court erred in not granting a mistrial, *sua sponte,* as a result of testimony of one of the state's witnesses (Point I) and "repeated introduction" of evidence of another uncharged crime (Point II).

Defendant made no objection to the testimony he now asserts was improper or to the evidence he characterizes as involving other uncharged crimes. Absent objections to evidence at trial, assertions that it was inadmissible are not preserved for appellate review. *State v. Gregory,* 832 S.W.2d 526, 527 (Mo.App.1992).

Since the error of which Defendant complains was not preserved for appellate review, he bears the burden of demonstrating plain error by showing that manifest injustice or a miscarriage of justice will result if it is left uncorrected. *State v. Hornbuckle,* 769 S.W.2d [89] at 92–93 [Mo. banc, *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989) ]. He must go

beyond the mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. *Id.* *State v. Fleischer,* 873 S.W.2d 310, 314 (Mo. App.1994).

▮ Point I complains the trial court erred in not, *sua sponte,* declaring a mistrial when a deputy sheriff testified in response to inquiry on direct examination by the prosecuting attorney that Ms. Melonson, the passenger who had been in defendant's car immediately before it was searched, told the deputy that the drugs found in the car belonged to defendant; that "this hearsay admission prejudiced defendant to the point of causing manifest injustice...."

▮ In *State v. Basile,* 942 S.W.2d 342, 357 (Mo. banc 1997), a defendant complained the trial court committed plain error in not, *sua sponte,* declaring a mistrial when one of the state's witnesses related a hearsay statement on direct examination. The court did not find plain error. It observed, "Generally, inadmissible hearsay which comes into the record without objection may be considered by the jury. *State v. Thomas,* 440 S.W.2d 467, 470 (Mo.1969). In the absence of a timely objection or proper motion to strike, hearsay evidence is admitted. *State v. Griffin,* 662 S.W.2d 854, 859 (Mo. banc 1983), *cert. denied,* 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984)." *See also, State v. Walden,* 861 S.W.2d 182, 187 (Mo.App.1993) ("The jury is allowed to consider inadmissible hearsay admitted into evidence without objection."); *State v. Wallace,* 825 S.W.2d 626, 632 (Mo.App.1992) ("Inadmissible hearsay which goes in the record without objection may be considered by the jury."). "The admission of hearsay evidence is not plain error if no objection is made at trial to its admission." *Walden, supra.* Point I is denied.[1]

▮ Point II contends the trial court committed plain error in not, *sua sponte,* declaring a mistrial "when the state repeatedly introduced evidence of a logically irrelevant and highly prejudicial uncharged stealing crime by [defendant] that allowed the state to portray [defendant] as a low-life drug abuser who had a propensity to commit the crime charged and who could not be trusted when he testified in a jury trial for the possession of a controlled substance."

Defendant complains that "the State repeatedly introduced evidence of another crime allegedly committed by [defendant]." He argues, "The State introduced testimony that [defendant] had stolen towels, soap, toilet paper and bed linens from a motel in Hickory County on the day he was stopped in Polk County." Defendant asserts that after "repeated references" to this, a miscarriage of justice and manifest injustice occurred when defendant's trial was permitted to proceed.

This court's review of the record on appeal does not demonstrate that the Hickory County events were a significant part of the state's case against defendant or his trial. During opening statement the prosecuting attorney stated that the deputy sheriff who stopped defendant had received a report to watch for the vehicle in which defendant was travelling "concerning some alleged activity that occurred in Hickory County"; that the vehicle was stopped "in an attempt to really ask questions about the incident in Hickory County."

Defendant's attorney alluded to circumstances in Hickory County in his opening statement. He told the jury the evidence would be that defendant and Ms. Melonson were stopped by a deputy sheriff as they came into Bolivar adding, "I don't know what the evidence will be exactly about this communication from Hermitage about a motel theft."

Deputy Kennedy explained, why he stopped defendant's automobile. He testified that he received information that Hickory

---

1. One of the cases on which defendant relies in support of Point I is *State v. Clevenger,* 733 S.W.2d 782 (Mo.App.1987). His reliance on *Clevenger* is misplaced in that the issue for which that case was reversed and remanded for new trial did not involve plain error review of hearsay testimony. In *Clevenger,* there was an assertion that the defendant's objection to a hearsay statement had been omitted from the transcript. The state did not contest that assertion. The question of whether an accurate record was made at trial compelled reversal of the judgment of conviction and remand for new trial.

County officials dispatched "stop and hold information" concerning a "green Camaro with a tag that's on my report that may have been involved in a theft of some items and it might be coming through our area." He was asked if he had been given a description of the type of items believed to have been stolen. He answered, "I believe the only information I received at that time was some sheets and some towels."

The record does not support defendant's characterization of the evidence related to the Hickory County dispatch as "portray[ing] [defendant] as a low-life drug abuser who had a propensity to commit the crime charged and who could not be trusted when he testified in a jury trial." There was no plain error. Point II is denied.

Point III asserts the trial court erred in denying defendant's motion for judgment of acquittal at the close of the evidence. Defendant argues that the evidence presented by the state was illegally obtained. He complains that all the evidence was the product of an illegal search and seizure, the stopping of defendant's vehicle by the Polk County deputy sheriff.

■ The issues Point III attempts to raise were not preserved for review. The procedure for challenging evidence contended to be the product of an illegal search is explained in *State v. Fields,* 442 S.W.2d 30 (Mo.1969).

It has long been the rule in this state that evidence obtained by means of an unlawful search and seizure by police officers is not admissible against the person searched, or whose property is searched, where timely objection to the use of such evidence is made. *State v. Cuezze,* Mo., 249 S.W.2d 373 [1952]; *State v. Holt,* Mo., 415 S.W.2d 761 [1967]. The procedural rules of this state, ... require that the contention of an unlawful search and seizure be made by motion to suppress the evidence in advance of trial. *State v. O'Brien,* Mo., 252 S.W.2d 357 [1952], certiorari denied, 345 U.S. 929, 73 S.Ct. 790, 97 L.Ed. 1359; *State v. Lord,* Mo., 286 S.W.2d 737 [1956]; *State v. Holt,* supra. The validity of a search and the admissibility in evidence of the fruits of that search

present issues collateral to the issue of guilt which are to be tried independently, *State v. Dalton,* Mo., 23 S.W.2d 1 [1929], and "Not only must defendant file a motion to suppress the controverted evidence, but he has the burden of presenting evidence to sustain his contentions." *State v. Holt,* supra, 415 S.W.2d at p. 764; Supreme Court Rule 33.03(a)(5), V.A.M.R.; *State v. Jonas,* Mo., 260 S.W.2d 3 [1953]. He must also keep the question alive by timely objection, *State v. Tunnell,* 302 Mo. 433, 259 S.W. 128 [banc 1924]; *State v. Hepperman,* 349 Mo. 681, 162 S.W.2d 878 [1942], and by preservation of the issue in a motion for new trial. *State v. Lord,* supra. The only exception under our procedural rule is where the defendant "had no reason to anticipate the evidence would be introduced and was surprised." *State v. O'Brien,* supra, 252 S.W.2d [at] 359.

*Id.* at 33. *See* § 542.296.1-.3, RSMo 1994; Rule 34.01. *See also State v. Anderson,* 698 S.W.2d 849, 851 (Mo. banc 1985); *State v. Hardiman,* 943 S.W.2d 348, 349–50 (Mo.App. 1997).

Defendant filed no motion to suppress directed to any of the evidence about which he now complains. Neither did he raise objections at trial concerning that evidence, nor did he address in his motion for new trial the perceived shortcomings he now extols.

■ Additionally, defendant's motion for directed verdict at the close of the evidence did not challenge the evidence on the basis Point III attempts to assert. A trial court will not be convicted of error on a ground never presented to that court as such. *State v. Light,* 686 S.W.2d 538, 542 (Mo.App.1985). Point III is denied.

■ Point IV asserts the trial court erred in denying defendant's motion for new trial on the basis of jury misconduct set forth in affidavits filed with the trial court. Point IV argues "the state failed to meet its burden of showing that the jurors were not subjected to improper influence from other jurors or law enforcement officers."

Defendant did not assert "juror misconduct" during trial. The issue was first pre-

sented in defendant's motion for new trial. The basis for the claim asserted in the trial court was:

> Because of the misconduct of the jury and the police officer witnesses of Plaintiff. During recesses and at the dinner furnished by the Court for the jury, the police officers were seen repeatedly talking to the jury and soliciting conversation with the members of the jury. The jury were heard to be talking to each other about Defendant's guilt during a recess before the case was submitted to the jury. On one occasion the prosecutor was seen talking to a juror during a recess.

 Factual allegations in a motion for new trial are not self-proving. *State v. Pence*, 428 S.W.2d 503, 506 (Mo.1968); *State v. Geary*, 884 S.W.2d 41, 44 (Mo.App.1994). All that was provided the trial court in support of the allegations in the motion for new trial concerning jury misconduct were three affidavits.[2]

An affidavit of Jeffery Woods, a friend of defendant who testified at trial, was filed with the motion. It stated he saw the prosecutor talking with one of the jurors during a recess, but acknowledged he could not hear the conversation. Affidavits of defendant's aunt and mother were filed claiming they had seen deputy sheriffs who testified at trial talking with jurors at recesses.

 The record reflects no agreement by the state to permit the affidavits filed to be treated as evidence. "[I]n the absence of a stipulation of the parties, an affidavit is not to be treated as evidence." *State v. Zimmerman*, 886 S.W.2d 684, 693 (Mo.App.1994).

Defendant was afforded an opportunity to present evidence at the hearing on his motion for new trial. He failed to do so. There was nothing for the state to rebut. The trial court did not abuse its discretion in refusing to grant a new trial on the basis of a claim of juror misconduct that defendant failed to substantiate. Point IV is denied.

Defendant's remaining point, Point V, alleges defendant was denied effective assistance of counsel. The point attempts to incorporate complaints about the trial court's conduct of the trial into the allegation of ineffective assistance of counsel by asserting the trial court abused its discretion in denying requests to continue the trial setting; in "instructing" the attorneys the case would be tried in one day; in "failing to recess the trial at a reasonable hour"; in questioning the manner of supervision utilized in arranging for the jury's evening meal; and in not causing a presentence investigation to be conducted. Point V asserts that defendant's trial attorney was exhausted "beyond the point at which he could render effective assistance of counsel."

 The only issues required to be determined on appeal are those raised in the points relied on. *Mayes v. Mayes*, 941 S.W.2d 37, 40 (Mo.App.1997). Claims of ineffective assistance of counsel may not be considered on direct appeal. *State v. Blades*, 928 S.W.2d 371, 374 (Mo.App.1996). Point V is denied. The judgment of conviction is affirmed.

MONTGOMERY, C.J., and BARNEY, J., concur.

---

**2.** A fourth affidavit, the affidavit of defendant's father, was also presented. It attempted to address other issues.